ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
David Vaughn, Craighead Circuit Clerk
2024-Jan-08  10:05:59
16JCV-24-3
C02D01 : 19 Pages

## IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
## FOR THE SECOND JUDICIAL DISTRICT

| | |
|---|---|
| PHYLLIS DONLEY, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　　　　　*Plaintiff,*<br><br>v.<br><br>SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY,<br><br>　　　　　　　　　　　　　*Defendant.* | Case No. 16JCV-24-3<br><br>**CLASS ACTION**<br><br>**JURY DEMAND** |

### AMENDED CLASS ACTION COMPLAINT

Plaintiff Phyllis Donley ("Plaintiff"), brings this class action on behalf of herself and all others similarly situated, by and through undersigned counsel, and for her Complaint against Defendant Southern Farm Bureau Casualty Insurance Company ("Farm Bureau" or "Defendant") states and alleges as follows:

### INTRODUCTION

1.　　　This is a class action in which Plaintiff seeks to represent Farm Bureau insureds in Arkansas who received a payment for the loss of a totaled vehicle where Farm Bureau used valuation reports prepared by Mitchell International ("Mitchell"), called Mitchell Vehicle Valuation Reports, to determine the actual cash value of the loss vehicles. Under the terms of its insurance policies, Farm Bureau has a duty to pay, and represents that it does pay, the actual cash value of a loss vehicle when adjusting total loss claims. By using Mitchell Vehicle Valuation Reports, Farm Bureau systemically thumbs the scale against its insureds when calculating the actual cash value of their loss vehicles by applying so-called "Projected Sold Adjustments."

1.　　　In the event of a "total loss" to an insured vehicle—i.e., where repair of the vehicle is impossible or uneconomical—Farm Bureau's uniform insurance policies with Plaintiff and all

putative Class members (defined below) promise to pay for the loss, limited to the ACV of the vehicle based on "consideration of [the vehicle's] fair market value, age, and condition" "at the time of loss[.]" Ex. 1 at 17 (Policy).[1]

2.    When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Farm Bureau, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under its insurance policy terms, Farm Bureau has a duty to pay, and represent that they will pay, the ACV of a loss vehicle when adjusting total loss claims.

3.    Notwithstanding these obligations and representations, Farm Bureau fails to fulfill its obligations by taking advantage of a valuation process that employs improper adjustments to reduce the value of comparable vehicles specified in the valuation reports, in turn reducing the valuation of the total loss vehicles and the corresponding claim payment to the insured.

4.    Specifically, Farm Bureau, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Ex. 2 at 10.

---

[1] Exhibit 1 is a specimen policy, which is materially identical to the policy for all members of the putative Classes.

5.      Neither Farm Bureau nor Mitchell has ever conducted any study or research to determine whether such "consumer purchasing behavior" exists and impacts ACV in the modern used-car market. Worse than this complete lack of curiosity is that Farm Bureau thumbs the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment. For example, until July 2021, Farm Bureau, through its vendors, simply threw out all data where the list price equaled or exceeded the sold price. And to this day, it persists in excluding from Projected Sold calculations some data where the list price equaled sold price and all data where the sold price exceeds the list price, even though examples abound of dealerships that charge more than advertised price to customers purchasing a vehicle with cash—i.e. not providing the dealer the opportunity to profit through financing the sale or acquiring a trade-in—which is particularly relevant to the inquiry of determining a vehicle's actual cash value. Farm Bureau fails to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at time of purchase, bought an extended warranty or service plan, or financed the purchase).

6.      Nevertheless, Farm Bureau applies a Projected Sold Adjustment to the advertised (or listed) price of comparable vehicles when calculating the ACV of total-loss vehicles. For Plaintiff, the Projected Sold Adjustment was approximately 5.1% of nine of the ten comparable vehicle's value prior to adjustments.[2] To arrive at the Projected Sold Adjustment amount, however, Farm Bureau, through third-party vendors, and as set forth above, categorically excludes transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds list price, transactions from dealerships who market themselves as "no-haggle"

---

[2] The price for the first comparable vehicle was a sold price to which Farm Bureau applied no further downward adjustment for speculative "consumer purchasing behavior[.]"

dealerships, and every transaction where the sold price equaled the advertised price.

7.    As explained herein, the used auto market is such that, given the ubiquity of Internet advertising and shopping and developments in sophisticated pricing software, car dealerships simply do not negotiate off of Internet-advertised prices. Any difference between a list and sales price cannot be reflexively attributed to a negotiation of the vehicle's cash value, but rather that a dealer shifted its profits to other components of the transaction. For example, profits made through arranging financing or taking a desirable trade-in or selling ancillary products described above, or that the dealer applied a generally unavailable discount to the cash value of the vehicle (such as employee discount, loyalty discount, military discount, or friends/family discount). But Farm Bureau ignores these market realities and is content with paying insureds and claimants below-market prices for their totaled vehicles.

8.    To arrive at its conclusion that consumers negotiate down the advertised price, Farm Bureau, through its vendors, intentionally distorts the data, excludes transactions that undercut its false hypothesis, and ignores market realities, all for the purpose of applying a capricious and unjustified Projected Sold Adjustment to artificially deflate the value of total loss vehicles. In other words, Farm Bureau is considering an artificially lower false market, in breach of its contractual duty.

9.    This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through these arbitrary, unsupported, unjustified adjustments, which benefits the insurer at the expense of the insured, violates Defendant's policies with its insureds.

4

## JURISDICTION AND VENUE

10.     Plaintiff and all proposed class members are citizens of the State of Arkansas. Southern Farm Bureau Casualty Insurance Company is a Mississippi insurance company, headquartered in Mississippi and authorized to do business in the State of Arkansas, and at all relevant times hereto, was engaged in the marketing, sale, and issuance of automobile insurance policies in the State of Arkansas and maintains branch offices or other places of business in Craighead County.

11.     The compensatory damages being sought by Plaintiff do not exceed $75,000, and no individual member of the Class would possess a compensatory damage claim in excess of $75,000. Additionally, the aggregate compensatory damages (in the amount of Projected Sold Adjustments wrongfully deducted), claimed by Plaintiff and the Class are below the $5,000,000 federal jurisdictional threshold under the Class Action Fairness Act ("CAFA").

12.     Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and venue is proper.

## PARTIES

13.     Plaintiff Phyllis Donley resides in Pulaski County and is a citizen of the State of Arkansas. At all relevant times hereto, Plaintiff Donley was contracted with Farm Bureau on a policy for automobile insurance. On or about June 3, 2020, Plaintiff Donley's insured vehicle was deemed a total loss.

14.     Defendant, Southern Farm Bureau Casualty Insurance Company, is a property and casualty insurance company that owns numerous offices throughout Arkansas, Colorado, Florida, Louisiana, Mississippi, and South Carolina. Defendant Farm Bureau's corporate headquarters is located at 1800 East County Line Road, Ridgeland, Mississippi 39157. Defendant Farm Bureau

5

conducts business in Arkansas through insurance agents and other company personnel and maintains a branch office or other place of business at 2731 E Highland Jonesboro, AR 72401.

## FACTUAL ALLEGATIONS

15.    Plaintiff owned a 2017 Dodge Journey SE that was deemed a total loss on or around June 3, 2020.

16.    Like all members of the Class, Plaintiff Donley made a first-party property damage claim with Farm Bureau.

17.    Like all members of the Class, Farm Bureau declared Plaintiff Donley's vehicle to be a total loss.

18.    Pursuant to the terms of her contract, which are, and have been, substantively identical for all members of the putative Class during the Class period, Farm Bureau elected to pay Plaintiff the actual cash value of her insured vehicle.

19.    When calculating its valuations and claims payments, Farm Bureau systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action.

20.    This process involves obtaining a "Vehicle Valuation" report from Mitchell (in which Farm Bureau chooses to apply Projected Sold Adjustments), and then using and relying upon the valuation provided to determine the benefit payment under the insured's policy.

21.    Farm Bureau provided a Vehicle Valuation to Plaintiff on or around June 3, 2020. See Ex. 2.

6

22.     Farm Bureau valued Plaintiff Donley's total loss claim at $11,166.15[3] and paid Plaintiff that amount as the actual cash value of her vehicle.

23.     To arrive at that valuation, the Vehicle Valuation report provided the prices of ten different comparable vehicles advertised for sale online and applied a Projected Sold Adjustment of approximately 5.1% to nine of them.[4] Ex. 2 at 6-7.

24.     The use of the Projected Sold Adjustment to adjust Plaintiff's total loss claim downward violates the applicable insurance policy, under which Farm Bureau has a duty appraise actual cash value by "consideration of fair market value, age, and condition of the item in question at the time of loss or damage." Ex. 1 at 17. Farm Bureau's application of PSA deductions breaches this contract obligation in that PSAs are unfounded, are factually erroneous, and result in Farm Bureau paying Plaintiff and other insureds less than the actual cash value of their totaled vehicles based on their actual fair market value.

25.     In truth, Farm Bureau's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of Internet pricing and comparison shopping. Before the ubiquity of online advertising and shopping, "advertised" prices had very little to do with eliciting car buyers to particular dealerships—instead, car buyers generally went to their local used car dealership that had the desired vehicle in stock for sale. The "advertised" price was simply whatever price was listed on the physical window. And consumers could not, as they can now, easily compare that price to Internet advertisements of the same vehicle offered by competitors.

---

[3] This amount does not include tax, title, transfer fees, or deductible.

[4] The first comparable vehicle used a sold price to which Farm Bureau applied no further downward adjustment.

26.     As such, dealerships generally priced vehicles above market knowing that some consumers might be poor negotiators and they would realize an inflated profit on those sales. This above-market "window" price obviously allowed for negotiation, and a downward negotiation would often occur.

27.     But during the Class Period, that is simply no longer how the used car market operates. Now, given the need for Internet advertising, the prevalence of Internet shopping and consumer behavior, developments in sophisticated pricing software universally used by car dealerships, and the ease with which consumers can compare the advertised prices of identical vehicles across multiple competing dealerships, used car dealerships no longer price vehicles above market with room for—and the expectation of—negotiation. Instead, car dealerships use sophisticated pricing software—which provides the advertised prices of all competitors; the average "turn" of a given year, make and model; the amount for which vehicles have sold during a given time-period; etc.—and now appraise vehicles before acquiring them to price them to market and do not negotiate from that price.

28.     This makes sense, because if a car dealership priced a vehicle above market with room for negotiation, consumers would simply not go to that dealership. This is because consumers can easily compare advertised prices and would seek out the vehicle priced to market, rather than the same vehicle priced at a higher amount (i.e., above market). Given the choice between paying less or paying more for an identical vehicle, consumers will choose to pay less.

29.     As such, a negotiated discount off the *cash* price is highly atypical and is not proper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a

replacement have limited time to search out the illusory opportunity to obtain the below-market deal Defendants assume always exists without any explanation or support.

30. Farm Bureau's Projected Sold Adjustments are contrary to appraisal standards. Farm Bureau begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that otherwise industry-standard process by thumbing the scales against the insured. Farm Bureau documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, however, Farm Bureau abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and make adjustments based only on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

31. Farm Bureau thumbs the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the "sales price" but do not influence the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

32. Until July 2021, Farm Bureau excluded from the calculation of the Projected Sold Adjustment all transactions in which the list price of a vehicle equaled the sold price.

33. Even after July 2021, Farm Bureau still excludes some transactions in which the list price of a vehicle equals the sold price.

34. Farm Bureau has excluded and continues to exclude from the calculation of the

9

Projected Sold Adjustment all transactions in which the sold price of a vehicle is greater than the list price.

35.     Without having performed any investigation or study, Farm Bureau simply assumes all such transactions are anomalies.

36.     Nor does Farm Bureau or their vendors attempt to verify—even a single time— for those transactions where the advertised price exceeded sold price, whether the reason for the reduction was negotiation of the cash price of the vehicle and not some other (far more likely) reason, some of which are discussed herein.

37.     Moreover, the accuracy of Farm Bureau's data is, at best, suspect, as it contains a significant number of transactions where the advertised date in the database comes after the sold date. As a matter of simply chronology, it makes no sense to advertise a vehicle after it is sold. But here, too, Farm Bureau makes no effort to control for this obvious flaw in the data.

38.     These unjustifiable, errors, of course, skew the data in favor of Farm Bureau to the detriment of their insureds.

39.     Moreover, examples abound demonstrating the glaring error of Farm Bureau's cherry-picking practices.

40.     For example, related to the exclusion of sales prices greater than list prices, all advertised prices for comparable vehicles listed in Farm Bureau's valuation reports are scraped from Internet sources—specifically Cars.com, Autotrader.com, Vast.com, and TrueCar.com.

41.     The advertised prices many dealerships publish on these websites include discounts for consumers who are financing and providing a trade-in. Thus, a consumer who was not financing the vehicle through the dealership or who was not trading in a vehicle—obviously, insureds who sustained a total loss almost certainly are not trading a vehicle when purchasing a

10

replacement vehicle—would have to pay in cash more than the price listed on sources where Mitchell scrapes advertisements for comparable vehicles. In determining the actual cash value of Plaintiff's and class members' totaled vehicles, there is no justification for Farm Bureau to have excluded those transactions from calculating the Projected Sold Adjustment, while only including transactions where the sold price was recorded as less than the list price.

42.     Simply put, there is no justification for Farm Bureau to exclude such transactions as outliers or mistakes when justifying how it calculates the amount of the so-called Projected Sold Adjustments.

43.     Doing so serves only to skew the data to meet Farm Bureau's unjustified, unsupported, and uninvestigated assumption that the list price of comparable vehicles should always be reduced to pay insureds less.

44.     Farm Bureau further fails to control whether the vehicle was purchased with discounts unavailable to the public (e.g., employee discounts).

45.     Farm Bureau also fails to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the recorded "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

46.     In these instances, the ACV of the vehicle remains its price to market; the dealership simply transferred the anticipated profit through either the sale of an optional ancillary product or by reducing what it would have offered in trade-in value.

47.     The impropriety and arbitrariness of Farm Bureau's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions, Inc.—does not apply projected sold

adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

48.      On information and belief, the impropriety and arbitrariness of Farm Bureau's Projected Sold Adjustments are further demonstrated by the fact that Mitchell does not apply these adjustments when determining the ACV of total losses in California. There is no justification for applying these adjustments when valuing total losses in Arkansas while not subjecting California insureds to the same negative adjustments.

49.      In short, Farm Bureau is not determining ACV by considering the "fair market value" of its insureds' vehicles, but rather by considering a rigged market created for the purpose of reducing the ACV of its insureds' totaled vehicles.

50.      Plaintiff Donley and each member of the putative Class were damaged by Farm Bureau's application of these Projected Sold Adjustments because they were not paid the actual cash value, they would have received had Farm Bureau applied properly applied the comp methodology, consistent with its contractual obligations and representations.

51.      Were it not for this improper, factually erroneous adjustment, the "Market Value" in each valuation report would have been higher, resulting in a higher payment to insureds for actual cash value. Specifically, were it not for this unfounded, factually erroneous adjustment, Farm Bureau's payment of actual cash value to Plaintiff Donley would have been $585.50 higher,[5] before adding the related increase in payments for applicable sales taxes.

## CLASS ACTION ALLEGATIONS

52.      This action is brought by Plaintiff as a class action, on her own behalf and on behalf of all others similarly situated, under the provisions of Rules 23(a) and 23(b)(2), or, alternatively, 23(b)(3), of the Arkansas Rules of Civil Procedure, for damages, plus interest, costs, and attorney's

---

[5] $585.50 is the average of the Projected Sold Adjustments applied to each of the four comparable vehicles in Plaintiff Donley's valuation report.

fees. Plaintiff seeks certification of this action as a class action on behalf of the following class (the "Class"):

> All persons who made a first-party claim on a policy of insurance issued by Southern Farm Bureau Casualty Insurance Company in Arkansas where the claim was submitted from the earliest allowable time through the date an order granting class certification is entered, and Southern Farm Bureau Casualty Insurance Company determined that the vehicle was a total loss and based its claim payment on an Mitchell Report where a Projected Sold Adjustment was applied to at least one comparable vehicle.

53.     Excluded from the Class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, and the officers and directors of Defendant and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action.

54.     **Numerosity (Rule 23(a)(1)).** The exact number of Class members, as herein identified and described, is not known, but it is estimated to be over ten thousand. Accordingly, the Class is so numerous that joinder of individual members herein is impracticable.

55.     **Commonality (Rule 23(a)(2)).** There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class, and the relief sought is common to the entire Class. In particular, the common questions of law and fact include:

A.     Whether Farm Bureau systemically applied Projected Sold Adjustments or substantially similar adjustments to calculate the value of total loss vehicles;

B.     Whether, through the above referenced practice, Farm Bureau failed to pay its insureds the actual cash value of their loss vehicles;

C.     Whether, through the above referenced practice, Farm Bureau breached its contracts with its insureds;

D.     Whether Plaintiff and members of the Class are entitled to compensatory damages in the amount of the invalid adjustment applied to Plaintiff's and each Class member's valuation.

13

56.     **Typicality (Rule 23(a)(3)).** The claims of the Plaintiff, who is representative of the Class herein, are typical of the claims of the proposed Class in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the same acts of Farm Bureau, giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

57.     **Adequacy (Rule 23(a)(4)).** The named Plaintiff is a representative party for the Class, and is able to, and will fairly and adequately, protect the interests of the Class. The attorneys for Plaintiff and the Class are experienced and capable in complex civil litigation, insurance litigation, and class actions.

58.     **General Applicability (Rule 23(b)(2)).** Class certification is appropriate under Arkansas Rules of Civil Procedure rule 23(b)(2) because Farm Bureau's actions are generally applicable to the Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole.

59.     **Predominance & Superiority (Rule 23(b)(3)).** Class certification is appropriate under Rule 23 because the common questions of law and fact in this case predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication

of claims by Class members whose claims are too small and complex to individually litigate against a large corporate defendant.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

60.     Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

61.     Farm Bureau's insurance contract with its insureds provides coverage for the total loss of a vehicle on the basis of actual cash value. Moreover, in determining the actual cash value of a total loss vehicle, Farm Bureau must consider the vehicle's fair market value at the time of loss.

62.     Through the use of improper and unfounded Projected Sold Adjustments in Mitchell Vehicle Valuation reports, Farm Bureau handled, adjusted, and paid Plaintiff Donley's claim, and the claims of the members of the Class, in an amount less than the actual cash value required by Farm Bureau's insurance contracts.

63.     Farm Bureau's breaches have resulted in a systemic failure to pay the actual cash value of total loss vehicles as required under the contract.

64.     Moreover, implied in each of Defendant's insurance policies is a covenant that Defendant will act in good faith and deal fairly with their insureds; that it will do nothing to interfere with its insureds' rights to receive the benefits of the policies; that it will not place its own interests before those of its insureds; that they it exercise diligence, good faith, and fidelity in safeguarding the interest of its insureds; and that it will deal ethically with its insureds and will fairly and adequately inform them of the nature and scope of their insurance coverage (herein after referred to as "covenant of good faith and fair dealing").

65.     Defendant has breached the covenant of good faith and fair dealing by, inter alia:

A. Intentionally applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total loss vehicles;

B. Failing to pay insureds the actual cash value of their total loss vehicles;

C. Interpreting the terms and conditions of its insurance policies in an unreasonable manner, which is inconsistent with applicable law, solely in an effort to understate the fair market value of total loss vehicles and avoid paying insureds the actual cash value on their total loss claims;

D. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable; and

E. Failing to investigate how its vendor was calculating the Projected Sold Adjustments.

66. Defendant is in breach of the covenant of good faith and fair dealing and did the acts complained of herein, among others, for the purpose of undervaluing comparable and total loss vehicles and underpaying insureds' the actual cash value of their total loss claims.

67. Farm Bureau's breaches of contract have caused damages to Plaintiff Donley and members of the Class. Plaintiff Donley and proposed Class members' damages include the amounts improperly deducted by Farm Bureau from the insureds' payments on the basis of a Projected Sold Adjustment. Specifically, Plaintiff Donley's compensatory damages are $585.50, plus the additional taxes and fees owed on that amount.

68. Pursuant to Ark. Code Ann. § 23-89-208(f), Plaintiff and other members of the Class are entitled to recover the benefits denied to them, attorney's fees, a twelve percent (12%) penalty, plus pre-judgment and post-judgment interest.

16

## COUNT II
## DECLARATORY JUDGMENT

69.     Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

70.     A dispute between Plaintiff and the proposed Class and Farm Bureau is before this Court under Ark. Code Ann. § 16-111-101, *et seq.* concerning the construction of the auto insurance policies issued by Defendant and the rights arising under that policy.

71.     Plaintiff, for herself and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff is seeking a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Farm Bureau for it to base the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous Projected Sold Adjustments.

72.     Farm Bureau's unlawful common policy and general business practice of applying Projected Sold Adjustments has caused Plaintiff injury. Accordingly, Farm Bureau has breached the express terms of its contracts of insurance with Plaintiff and members of the Class requiring it to settle total loss claims on the basis of the total loss vehicle's ACV.

73.     As a result of these breaches of contract, Plaintiff and the proposed Class members have been injured. Plaintiff's and proposed Class members' damages include the amounts illegally deducted by Farm Bureau from the insureds' payments.

Plaintiff seeks a declaration that Farm Bureau's application of unfounded Projected Sold Adjustments results in a valuation of less than the ACV Farm Bureau is required under its insurance contracts to pay insureds.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

A.   Determine that this action may be maintained as a class action under Rule 23 of the Arkansas Rules of Civil Procedure, appoint Plaintiff as class representative, and appoint undersigned counsel as Class Counsel;

B.   Enter an order finding that Farm Bureau's actions described herein constitute a breach of contract;

C.   Enter a declaratory judgment that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Farm Bureau for Farm Bureau to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Projected Sold Adjustments;

D.   Enter an order enjoining Farm Bureau from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by Projected Sold Adjustments;

E.   Enter an order requiring Farm Bureau to pay compensatory damages to Plaintiff and all members of the putative Class in the amount of 100% of the proceeds that Farm Bureau wrongfully deducted from their insureds' payments in the form of Projected Sold Adjustments and related underpayment of taxes;

F.   Award a twelve (12) percent penalty pursuant to Ark. Code Ann. § 23-89-208(f)

G.   Award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

H.   Award reasonable attorneys' fees and costs pursuant to applicable law; and

I.   Grant such other legal and equitable relief as the Court may deem appropriate.

## **JURY DEMAND**

Plaintiff and members of the Class hereby request a trial by jury.

18

Dated: January 8, 2024

Respectfully submitted,

*/s/ Lee Lowther*
Hank Bates
Lee Lowther
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St.
Little Rock, AR 77201
Tel: (501) 312-8500
Fax: (501) 312-8505
llowther@cbplaw.com
hbates@cbplaw.com

*Counsel for Plaintiff and the Proposed*
*Class*

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
David Vaughn, Craighead Circuit Clerk
2024-Jan-08  10:05:59
16JCV-24-3
C02D01 : 28 Pages

# EXHIBIT 1

# IMPORTANT NOTICE

## To report a claim call our 24 Hour Claims Call Center toll free **1-866-275-7322.**

Do not fail to notify the Company of every accident, however slight, immediately upon its occurrence.

Do not delay sending notice because you are unable to give all the information desired; you can complete the notice later.

## SOUTHERN FARM BUREAU
## Casualty Insurance Company

### HOME OFFICE:
1800 East County Line Road
Ridgeland, Mississippi

Arkansas: Little Rock
10720 Kanis Road
(501) 224-4400

Florida: Gainesville
5700 SW 34th St.
(352) 378-8100

Louisiana: Baton Rouge
9516 Airline Highway
(504) 926-1944

Mississippi: Jackson
6310 Interstate 55N
(601) 957-3200

South Carolina: Cayce
724 Knox Abbott Dr
(803) 796-6700

Colorado: Denver
9177 E. Mineral Circle
(303) 749-7500

Visit us online at www.afbic.com

MV 1023    Rev. 08/02

---

# AUTO POLICY

## FORM MV 1023  (08/02)

Please read this policy carefully. It is your responsibility to examine the policy and the accompanying Declaration to make sure the types of coverage in the amounts you requested are being provided. As with any insurance policy, there are coverage limitations and exclusions. We encourage you to become familiar with them. Your agent can help if you have any questions.

This insurance policy is a legally binding contract. If you suffer a loss, examine the policy to understand your rights and obligations. Coverage could be affected if any insured fails to perform an obligation required by this policy.



## SOUTHERN FARM BUREAU
## Casualty Insurance Company

Dear Policyholder:

Thank you for choosing to insure your automobile with us. We appreciate the opportunity to provide you with our insurance services. We recommend you read your policy carefully. There are definitions conditions and exclusions that apply to your coverages. If you have any questions about your policy or if you need other insurance coverages, please give your insurance agent a call. Your agent will be happy to assist you.

If we fail to provide you with adequate service, you should feel free to contact us at:

Farm Bureau Center
PO Box 31
Little Rock, Arkansas 72203-0031
(501) 224-4400
www.afbic.com

You may also contact:

The Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, Arkansas 72201-1904
1-800-852-5494

Again "Thank you" for the trust you have shown in our company by allowing us to provide you with insurance protection.

SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY

# TABLE OF CONTENTS

Beginning
on page

AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
AUTO LIABILITY — COVERAGE A & B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  COVERAGE EXTENSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  COVERAGE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  LIMITS OF LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  OTHER INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
PERSONAL INJURY PROTECTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  COVERED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  COVERAGE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
UNINSURED MOTORIST—COVERAGES UMBI AND UMPD . . . . . . . . . . . . . . . . . . . . . . . . 8
  COVERED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  ADDITIONAL DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  TRUST AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  COVERAGE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  LIMITS OF LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  OTHER INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
UNDERINSURED MOTORIST COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  COVERED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  ADDITIONAL DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  COVERAGE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  LIMITS OF LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  CHANGES IN CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
PHYSICAL DAMAGE COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  COMPREHENSIVE COVERAGE D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  COLLISION COVERAGE E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  EMERGENCY ROAD SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  COVERAGE EXTENSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  CARGO COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  RENTAL TRAVEL COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  COVERAGE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  LIMITS OF LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  OTHER INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  REPAIR OF YOUR AUTO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
GENERAL POLICY CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
FARM BUREAU MEMBERSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
PARTICIPATING CONDITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
ENDORSEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  GOVERNMENT VEHICLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  CARRYING PASSENGERS FOR CONSIDERATION . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  SERVICE PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  FIRE, THEFT AND COMBINED ADDITIONAL COVERAGE . . . . . . . . . . . . . . . . . . . . . . 23
  NON-OWNERSHIP LIABILITY AND PERSONAL INJURY PROTECTION . . . . . . . . . . . . . . . 23
  RECREATIONAL VEHICLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# AGREEMENT

**We** will provide the coverages **you** have selected. This agreement is made in reliance upon **your** statements to obtain coverage and for **your** payment of premiums in amounts **we** require and subject to all of the terms and conditions of this policy. **Your** selections are shown in the policy **Declaration**(s).

## DEFINITIONS

The language of this insurance policy includes certain common words for easy understanding. They have exactly defined meanings. In this policy:

1. "**Auto(s)**" means a motor vehicle, motorcycle, semi-trailer or **trailer**, designed primarily to be used on public roads.

2. "**Auto business**" means a **business** or job where the purpose is to sell, lease, repair, service, transport, store or park **autos**.

3. "**Bodily injury**" means physical injury to the body of or sickness or disease sustained by a natural person. This includes death, mental pain and suffering, or mental anguish resulting directly from physical injury to the body of that natural person. "**Bodily injury**" does not include mental pain and suffering, mental anguish, or any other form of psychological injury to that natural person, not resulting directly from physical injury to the body of that natural person.

4. "**Business**" means profession, trade, occupation or other method of producing income.

5. "**Covered Person**" means or refers to the persons and organizations specifically indicated as entitled to protection under the coverage being described.

6. "**Declaration**" means the page that completes this policy by showing **your autos**, the coverages afforded, limits of protection, and other basic information.

7. "**Deductible**" means the amount of loss to be paid by **you** when a loss occurs.

8. "**Employee**" means all persons while employed by **you**, including being transported to and from work, except domestic servants.

9. "**Equipment**" means any permanent attachments usual and incidental to the use of an **auto**, except power operated machinery not specifically described in the **Declaration**. (A **trailer** is not considered **equipment**.)

10. "**Fungi**" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by any fungus, but does not include any fungus that is, is on, or is contained in, any goods or products intended for consumption.

11. "**Named insured(s)**" means the person or persons named in the current policy **declaration**.

12. "**Occupying**" means having actual physical contact with an **auto** while in, upon, entering, or departing from it.

13. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant. This includes but is not limited to any actual or potential carcinogen or other substance which actually or potentially causes illness or disease, and including smoke, vapor, soot, fumes, acids, alkalis, chemicals, **waste**, and sewage. "**Waste**" includes but is not limited to materials to be recycled, reconditioned or reclaimed.

14. "**Private passenger auto**" means a motor vehicle:
    a. having at least four wheels; and
    b. designed and licensed for use on public roads; and
    c. designed for pleasure use or driving to and from work and for farming.

    This definition includes a pickup truck or farm truck. It does not include commercial trucks with a rating capacity of one ton or more.

15. "**Property damage**" means physical injury to, destruction of, or loss of use of, tangible property.

16. "**Punitive**" or "**exemplary damages**" mean damages which may be imposed to punish a wrongdoer and to deter others from similar conduct.

17. "**Sexual harm**" means the actual, alleged, threatened, attempted, or coerced involvement in, or witnessing of, verbal or physical sexual molestation, rape, abuse, assault, or harassment.

1

18. "**Trailer**" means a vehicle designed to be pulled by a **private passenger auto.**

19. "**We**," "**us**," "**our**" and "**the Company**" mean the Southern Farm Bureau Casualty Insurance Company.

20. "**You**" and "**your**" means the policyholder first named in the current policy **Declaration**. Unless specifically stated otherwise in the policy, **you** and **your** includes the policyholder's spouse if a resident of the same household.

21. "**Your auto**" means the vehicle(s) described on **your** policy **Declaration.**

## TERRITORY

While **your** policy is in force the coverage **you** select applies to **auto** accidents in the United States of America and its territories and possessions, Canada, or between their ports.

## AUTO LIABILITY

### BODILY INJURY — COVERAGE A
### PROPERTY DAMAGE — COVERAGE B

**We** will pay damages for **bodily injury** and **property damage you** are legally obligated to pay, except **punitive damages,** caused by an accident, and arising out of the ownership, maintenance, and use of **your auto**. For the purpose of this coverage, the words "**covered person(s)**" include any members of **your** household and any person or organization legally responsible for the use of **your auto** with **your** permission. "**Covered person(s)**" does not include the United States of America or any of its agencies.

**We** will settle or defend, as **we** consider appropriate, any claim or suit asking for damages for **bodily injury** or property damage. **We** will use attorneys of **our** choice. In addition to **our** limit of liability, **we** will pay all defense costs **we** incur. **Our** duty to settle or defend ends when **our** limit of liability for this coverage has been exhausted. **We** have no duty to defend any suit or settle any claim for **bodily injury** or property damage not covered under this policy.

## SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, **we** will pay on behalf of a **covered person**:

1. Premiums on appeal bonds. However, **we** will not be obligated to apply for or furnish such bonds. **We** will pay all costs taxed against **you** and other **covered persons** in any such suit, and all interest added to awarded damages until such damages falling within **your** limits of liability are paid, offered or tendered into court;

2. Premiums on bonds for release of **your auto** which has been taken under court order. The face amount of the bond **we** pay for shall not be more than **your** limit of liability. **We** will pay the cost of bail bonds required because of an accident or traffic violation. **We** will not pay more than $250.00 per bail bond. **We** will not be obligated to apply for or furnish such bond;

3. Reasonable expenses **you** incur at **our** request but not more than $50 per day for loss of earnings;

4. Reasonable expenses **you** incur for direct first aid to others at the time of an accident.

## COVERAGE EXTENSIONS

When **your** policy insures a **private passenger auto** for Bodily Injury and Property Damage Liability Coverage, **we** will provide those same coverages for the use of certain other **private passenger autos.**

1. Use of Other Private Passenger Autos.

   Coverage applies to **you** or dependent relatives living in **your** household while using another **private passenger** auto. However, the **private passenger** auto cannot be:

   a. owned by **you** or dependent relatives of **your** household; or

   b. furnished or available for regular use by **you** or dependent relatives of **your** household.

   This extension applies only on policies issued to individual persons, not organizations.

2. Temporary Substitute Private Passenger Autos.

   **You** and dependent relatives living in **your** household have coverage for the use of a **private passenger** auto while it is a temporary substitute for **your private passenger** auto. **Your private passenger** auto must be out of use because of breakdown, repair, servicing, loss or destruction.

   The temporary substitute **private passenger** auto cannot be:

2

a. owned by **you** or dependent relatives of **your** household; or

b. made available for the regular use of **you** or dependent relatives of **your** household.

3. Additional or Replacement **Private Passenger Autos.**

When **you** acquire an additional or replacement **private passenger auto**, coverage applies for thirty (30) days from the date **you** aquire the **private passenger auto** or until the expiration date or cancellation date of this policy, whichever occurs first, when:

a. **you** tell **us** about the additional or replacement **private passenger auto** before the end of the thirty (30) days or the expiration date or cancellation date of this policy, whichever occurs first; and

b. **you** pay any additional premiums due.

These coverage extensions do not apply to accidents:

1. that involve any **auto you** are driving without permission that is stolen or is reasonably suspected to be stolen;

2. arising out of the operation or ownership of an **auto business.**

## Use of Trailers

Bodily Injury and Property Damage Liability Coverage applies to a **trailer** or farm machinery while pulled by a **private passenger auto** described on **your** Declaration. However, while not used with such a **private passenger auto**, **you** are the only **covered person** for this coverage.

This coverage will not apply when the **trailer** or farm machinery:

1. is used for any **business** or work other than farming unless shown on the **Declaration** and a premium paid;

2. is used as an office, store, display, demonstration, semi or passenger **trailer**, home or temporary living quarters unless shown on the **Declaration** and a premium paid.

## Compulsory Auto Insurance Law or Financial Responsibility Law

If an **auto** accident to which this policy applies occurs

in any state or province other than Arkansas, **we** will interpret **your** policy for that accident as follows:

1. If the state or province has:

a. A financial responsibility or similar law specifying limits of liability for "**bodily injury**" or "**property damage**" higher than the limit shown in the **Declarations**, **your** policy will provide the higher specified limit.

b. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, **your** policy will provide at least the required minimum amounts and types of coverage.

2. No one will be entitled to duplicate payments for the same elements of loss.

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## COVERAGE EXCLUSIONS

**We** will not pay for:

1. **bodily injury** or **property damage** caused by intentional acts committed by or carried out at the direction of **you** or any other **covered person**. The expected or unexpected results of these acts or directions are not covered;

2. **property damage** to property owned by, rented to, in charge of, or transported by **you** or any **covered person**. However, **we** will provide coverage for damage to a residence or private garage rented to **you**;

3. **bodily injury** sustained by **you** or any member of **your** family residing in **your** household;

4. **bodily injury** to any person employed by **you** or to any obligation for which **you** may be liable under any Workers' Compensation, unemployment compensation, disability benefits, Migrant and Seasonal Agricultural Worker Protection Law or any other similar benefits or laws;

5. **bodily injury** or **property damage** to any person protected under a Nuclear Energy Liability Insurance Contract or indemnity coverage, even if the contract has ended upon use of its liability benefits;

6. any obligation for which the United States of America or its agencies may be held liable under the Federal Tort Claims Act. However, this exclusion does not apply to any **covered person**;

7. **bodily injury** and **property damage** when **your auto** is used to carry persons or property for a fee or while leased, rented or hired to others. This exclusion will not apply if **we** agree by endorsement to grant coverage, and **you** pay an additional premium, for such use. Shared expense car pools will not be considered carrying persons for a fee;

8. **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any **auto** in an **auto business**. However, **we** do cover the maintenance and use of **your auto** by **you**, a member of **your** household or anyone associated with or employed by **you** if an **auto business**;

9. **bodily injury** or **property damage** sustained when any **auto** is used in preparation for, or while used in, any race, speed, stunting, pulling or any similar contest regardless of whether such contest is impromptu or prearranged;

10. liability resulting from loading or unloading of an **auto**, except by **you**, **your employee**, a lessee or borrower of **your auto** and their **employee**;

11. **punitive** or **exemplary damages**;

12. **bodily injury** or **property damage** when **you** or any **employee** intentionally conceals or misrepresents any material fact or circumstance relating to this insurance coverage;

13. **bodily injury** or **property damage** while **you** or anyone using **your auto**, with **your** permission, is involved in the commission of a felony; or while any such person is seeking to elude lawful apprehension or arrest by any law enforcement official;

14. **bodily injury** or **property damage** while any **trailer** covered by this policy is used with any **auto** owned or hired by **you** and not insured with **us** for **bodily injury** and **property damage** coverage;

15. **bodily injury** or **property damage** arising out of:

a. **sexual harm** committed, caused, instigated, or directed by **you**, **your employee** or agent or any other person. This exclusion applies whether or not such injury or damage is intended, expected or foreseeable by **you**, **your employee** or agent or any other person; and/or

b. the negligent:

   (1) employment, hiring, contracting and/or retention of a person who may commit, does commit, has committed or is alleged to have committed **sexual harm**; and/or

   (2) investigation, supervision, or reporting of or failure to report to the proper authorities, a person employed, hired, contracted and/or retained by **you** or any **covered person** who may commit, does commit, has committed, or is alleged to have committed **sexual harm**; and/or

   (3) failure by **you** or any **covered person** to seek medical, psychological or other trained or professional treatment, rehabilitation or counseling to prevent the involvement in, or instigation, or continuation of **sexual harm** by **you**, **your employee** or anyone **you** contract and/or retain;

   (4) entrustment of a person by **you** or any **covered person** to any other person who may commit, does commit, has committed or is alleged to have committed **sexual harm**;

16. **bodily injury** or **property damage** arising out of ownership, maintenance, use, or entrustment to others of any all-terrain motorized vehicle or cycle (ATV or ATC), or motorcycle unless specifically described in the Declaration;

17. **bodily injury** or **property damage** arising out of:

a. the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time, by any person, organization or governmental authority; and/or

b. any loss, costs or expense arising out of any:

   (1) request, demand or order that **you** test for,

4

monitor, clean up, remove, remedy, repair, contain, treat. detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, remedying, repairing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**;

18. **bodily injury** or **property damage** arising out of nuclear action, radiation, radioactive contamination, the discharge of a nuclear weapon, even if accidental, or any consequence of any of these;

19. **bodily injury** or **property damage** arising out of war (declared or undeclared), civil war, civil unrest, riot, insurrection, rebellion, revolution, or any consequence of any of these;

20. **bodily injury** or **property damage** that occurs, in whole or in part, because of the actual, alleged, attempted, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, rust, mold, mildew, wet rot or dry rot, or any other **fungi**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage;

21. any loss, cost or expense arising out of any:

a. request, demand, or order that **you** or any person test for, monitor, clean up, remove, remedy, repair, contain, treat, detoxify, neutralize, dispose of, or in any way respond to, or assess the effects of, rust, mold, mildew, wet rot or dry rot, or any other **fungi**; or

b. fine, claim, or suit by or on behalf of any person, organization, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, remedying, repairing, containing, treating, detoxifying, neutralizing, disposing of, or in any way responding to, or assessing the effects of, rust, mold, mildew, wet rot or dry rot, or any other **fungi**.

## LIMITS OF LIABILITY

**Our** obligation to pay damages for **bodily injury** or **property damage** is limited to the per person and per accident amounts shown in the Declaration. The following conditions shall apply:

1. the **bodily injury** liability limit shown for any one person is the maximum **we** will pay for all legal damages, except **punitive** or **exemplary damages**, arising out of **bodily injury** sustained by any one person as the result of any one accident.

    Subject to the limit per person, the limit of liability shown in the **Declaration** for each accident is **our** maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

2. for **property damage** liability, limits shown are for all legal damages, except **punitive** or **exemplary damages**, arising from any one accident;

3. the limit of liability will not add, stack, pyramid or in any way be increased even if:

    a. there is more than one **auto** on **your** Declaration and a separate premium charged for each;

    b. there is more than one person protected by **your** policy;

    c. there is more than one person injured in an **auto** accident;

    d. **you** have other policies with **us** or other companies;

    e. there are multiple **autos** involved in an **auto** accident;

    f. there are multiple collisions or impacts arising from an **auto** accident.

4. even if insured separately, an **auto** and attached **trailer** are considered one unit for purposes of **bodily injury** and **property damage** liability coverage.

## OTHER INSURANCE

In any loss involving the use of **your auto**, **we** will be liable for only **our** proportional share of damages if there is other collectible liability insurance or governmental self-insurance as required by Arkansas Code ann. § 21-9-303 affording indemnity protection to a **covered person** for the loss or damage. That share is determined by **our** proportion of the total insurance collectible for the damage.

5

For losses involving the use of other **autos**, temporary substitute **autos**, replacement **autos** or additional **autos**, **we** will pay covered damages that are not covered by other insurance or government self-insurance as required by Arkansas Code ann. § 21-9-303.

However, this policy shall provide primary coverage for use of a temporary substitute **private passenger auto**:

1. operated by **you** or dependent relatives living in **your** household; and

2. loaned to **you** or dependent relatives living in **your** household by a legally licensed automobile dealer for use as:

   a. a replacement for **your private passenger auto** while it is out of use due to its breakdown, repair or servicing; or

   b. a demonstrator **private passenger auto**.

## Personal Injury Protection

**You** may purchase one or more of the Personal Injury Protection Coverages shown below. When **you** pay an additional premium for one or more of the Personal Injury Protection Coverages, **we** agree to pay to or on behalf of each **covered person** who sustains **bodily injury** arising out of an **auto** accident, benefits under the coverages for which a premium is paid. Solely with respect to this coverage, "**your auto**" means the **auto**(s) shown on the latest policy **Declaration** for which one or more specific Personal Injury Protection Coverage(s) are shown to apply.

### COVERAGES

Medical and Hospital Benefits: **We** will pay all reasonable and necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, funeral expenses, and prosthetic services, eyeglasses, hearing aids and remedial religious treatment by a recognized method of healing. Such expenses must incur within twenty-four (24) months from the date of an **auto** accident. **Our** total liability will not exceed $5,000 for each **covered person**. Medical and Hospital Benefits do not include room charges in excess of those required for a semi-private room.

Accidental Death Benefits: **We** will pay the sum of $5,000 if the death of a **covered person** results

directly from injury, sickness or disease because of an **auto** accident. Death must be independent of all other causes. Death must occur within twelve (12) months from the date of an **auto** accident.

Income Disability Benefits: **We** will pay for loss of income, or for reasonable expenses if disability results directly from **bodily injury** because of an **auto** accident. **Our** limit of liability will not exceed the following:

a. Income Producers

   70% of the loss of income, subject to a maximum of $140 per week, whichever is less.

b. Non-Income Producers

   $70.00 per week, or fraction thereof, for expenses which are reasonably incurred for essential services. Such services must be provided in place of those the **covered person** normally performs without income.

Benefits under "a." and "b." above shall commence eight (8) days after the date of the accident and shall terminate when the **covered person** is able to return to work or upon death of the **covered person**, not to exceed fifty-two (52) weeks.

### COVERED PERSONS

**We** will provide Personal Injury Protection for:

1. **you** and members of **your** family living in the same household;

2. persons occupying **your auto** with **your** permission;

3. **you**, members of **your** family living in the same household, or persons occupying a temporary substitute **private passenger auto** that is loaned to **you** by a legally licensed automobile dealer for use as:

   (1) a replacement for **your private passenger auto** while it is out of use due to its breakdown, repair or servicing; or

   (2) a demonstrator **private passenger auto**.

4. persons struck by **your auto**, including pedestrians, bicyclists, motorcyclists, persons in a horse-drawn wagon or cart, and persons riding on an animal. **Your auto**

6

must be operated by **you** or with **your** permission.

## COVERAGE EXCLUSIONS

The following exclusions apply only to the Personal Injury Protection coverage. **We** will not provide coverage for:

1. **bodily injury** resulting from intentional acts committed by or carried out at the direction of **you** or any other **covered person**. The expected or unexpected results of these acts or directions are not covered;

2. **bodily injury** to any person while committing a felony, or while any person seeking to elude lawful apprehension or arrest by any law enforcement official;

3. **bodily injury** if benefits are payable under any workers' compensation or employer's liability policy, unemployment compensation, disability benefits, or any other similar benefits or laws;

4. damages alleged or awarded under the Migrant and Seasonal Agricultural Workers' Protection Act (29 USC Sections 801 et seq.) or any regulation promulgated thereunder;

5. **bodily injury** arising out of war (declared or undeclared), civil war, civil unrest, riot, insurrection, rebellion, revolution, or any consequence of any of these;

6. **bodily injury** arising out of the use of **your auto** when used to carry persons or property for a fee or while leased, rented, or hired to others unless permission is granted in writing by **us**;

7. **bodily injury** sustained by any person while **occupying** or when struck by any **auto** owned by or furnished for the regular use by **you** or any member of **your** family living in the same household unless the **auto** is shown on **your** latest policy **Declaration** for Personal Injury Protection;

8. **bodily injury** sustained by any person other than **you** or any family member while **occupying** any **auto**, other than **your auto**, while employed or otherwise engaged in an **auto business**;

9. **bodily injury** arising out of nuclear action,

radiation, radioactive contamination, the discharge of a nuclear weapon, even if accidental, or any consequence of any of these;

10. **bodily injury** while **occupying** any **auto** or **trailer** used as a home or temporary living quarters;

11. **bodily injury** sustained when any **auto** is used in preparation for, or while used in, any race, speed, stunting, pulling or similar contest, regardless of whether such contest is impromptu or prearranged;

12. **bodily injury** when any **covered person** intentionally conceals or misrepresents any material fact or circumstance relating to this insurance;

13. **bodily injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time, by any person, organization or governmental authority.

14. **bodily injury** or **property damage** that occurs, in whole or in part, because of the actual, alleged, attempted, or threatened inhalation of, ingestion of, contact with, exposure to, existence of , or presence of , rust, mold, mildew, wet rot or dry rot, or any other **fungi**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage;

15. any loss, cost or expense arising out of any:

    a. request, demand, or order that **you** or any person act for monitor, clean up, remove, remedy, repair, contain, treat, detoxify, neutralize, dispose of, or in any way respond to, or assess the effects of rust, mold, mildew, wet rot or dry rot, or any other **fungi**; or

    b. fine, claim, or suit by or on behalf of any person, organization, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, remedying, repairing, containing, treating, detoxifying, neutralizing, disposing of, or in any way responding to, or

7

assessing the effects of, rust, mold, mildew, wet rot or dry rot, or any other **fungi.**

## CONDITIONS

1. Other Insurance

   a. This coverage shall not apply if there is other valid and collectible insurance under any other **auto** policy or governmental self-insurance as required by Arkansas Code ann. § 21-9-303. This paragraph (1) shall not apply to such other insurance that applies to **you** or any member of **your** family residing in the same household.

   b. If **you** or any member of **your** family residing in the same household are insured in an **auto** accident and benefits are payable under any other valid and collectible **auto** insurance coverage or governmental self-insurance as required by Arkansas Code ann. § 21-9-303, affording benefits similar to those prescribed by Arkansas Statute 23-89-202, this insurance shall be excess over such other insurance.

      However, this coverage applies as primary coverage if any **covered person** sustains **bodily injury** arising out of the use of a temporary substitute **private passenger auto** that is loaned to **you** by a legally licensed automobile dealer for use as:

      1. a replacement for **your private passenger** auto while it is out of use due to breakdown, repair or servicing; or

      2. a demonstrator **private passenger auto.**

2. Subrogation

   When a recipient of benefits under Coverage Medical and Hospital Benefits or Income Disability Benefits recovers in tort for injury, either by settlement or by judgement, we will have a right of reimbursement and credit out of the tort recovery or settlement. The cost of collection will also be deducted. All costs of collection shall be assessed against **you** and **us** in the proportion each benefits from such recovery. **We** shall have a lien upon said

recovery to the extent of **our** said payments.

   **We** shall be entitled to a recovery only after **you,** or any **covered person** has been fully compensated for damages.

3. Payments

   Payments under the Income Disability Benefits shall be made on a monthly basis as benefits accrue. However, the **covered person** or someone on his or her behalf must file reasonable proof with **us** of the amount of all benefits. Regardless of the number of **autos you** insure with **us,** or the number of **covered persons,** Personal Injury Protection coverages will not add, stack or pyramid in any way. The sum of any payment(s) made by **us:**

   (1) under this policy; and

   (2) under any like policies issued by **us,** regardless of the number of **autos** insured, and as a result of any one accident, shall not exceed:

      (a) Under Medical and Hospital Benefit: $5,000 each person.

      (b) Under Accidental Death Benefit: $5,000 each person.

      (c) Under Income Disability Benefit:

         (i) for income producers — $7,280 each person.

         (ii) for non-income producers — $3,640 each person.

## UNINSURED MOTORIST — COVERAGES UMBI AND UMPD

**We** will pay damages, except punitive or exemplary damages, **you** are legally entitled to collect from an owner or driver of an **uninsured auto** for:

1. UMBI (Uninsured Motorist **Bodily Injury**): **bodily injury** suffered by **you** caused by an accident arising out of the operation, maintenance or use of an **uninsured auto**; and

   Uninsured Motorist **Bodily Injury** caused by an accident arising out of operation, maintenance or use of a temporary substitute **private passenger auto** loaned to **you** or any member of

8

**your** family living in **your** household by a legally licensed automobile dealer for use as:

   a. a replacement for **your private passenger auto** while it is out of use due to its breakdown, repair or servicing; or

   b. a demonstrator **private passenger auto**.

2. UMPD (Uninsured Motorist Property Damage): **property damage** caused by an accident arising out of the operation, maintenance or use of an **uninsured auto**.

Please review your latest policy Declaration to determine the exact coverage applying to **your auto**(s).

## COVERED PERSONS

We will provide Uninsured Motorist coverage for:

1. **you** (if **you** are an individual) or any member of **your** family residing in **your** household;

2. any person **occupying your auto** with **your** permission.

## ADDITIONAL DEFINITIONS

Except with respect to the terms defined below, the definitions shown elsewhere in this **auto** policy booklet also apply to this coverage.

For the purpose of Uninsured Motorist Coverages, the words "**property damage**" means injury to or destruction of **your** auto or its parts. "**Property damage**" does not mean loss of use of **your auto**.

"**Uninsured auto**" means:

1. an **auto** to which no liability bond or policy affording coverages for **bodily injury** or **property damage** applies at the time of the accident;

2. a "hit and run" **auto**, whose owner or driver remains unknown, which has actual physical contact with **you** or **your auto**;

   **Your** injury must be a result of the accident. **You** must report a "hit and run" accident within 24 hours to the police. **You** must file with **us** within 30 days, a statement about the accident and all damages claimed. The **auto you** were in at the time of the accident must be available for **our** inspection;

3. an **auto** for which an insuring or bonding com-

pany or governmental self-insurance as required by Arkansas Code ann. § 21-9-303 denies coverage or becomes insolvent or bankrupt.

"**Uninsured auto**" does not mean:

   a. a farm-type tractor;

   b. a vehicle designed for use off public roads;

   c. a vehicle operated on crawler treads or rails;

   d. a vehicle insured by this policy;

   e. a vehicle owned or operated by a self-insurer under any applicable motor vehicle law, except a self insurer who is or becomes insolvent and cannot provide amounts required by that motor vehicle law;

   f. a vehicle owned by or operated on behalf of a governmental unit or agency.

## TRUST AGREEMENT

To the extent of any payment **we** make under this coverage, **we** are entitled to any payment made to you or to any **covered person** by any legally liable party. **You** or any **covered person**:

1. will hold in trust for **the Company our** rights of recovery against any such party;

2. will do whatever is proper to secure such rights, and will do nothing to prejudice them. All related and necessary papers and instruments will be executed and delivered to **us**;

3. must take any necessary action to help **us** recover payments made to **you** under any coverage;

4. must repay **us** from any recovery for **our** expenses incurred in the action.

We shall be entitled to a recovery only after **you**, or any **covered person** has been fully compensated for damages.

If payment of an uninsured motorist claim arises out of the insolvency of an insurer, we will have right of recovery against the insurer or its receiver. **We** will acquire the same rights the policyholder of the insolvent insurer would have had.

**COVERAGE EXCLUSIONS**

Uninsured Motorist coverages do not apply:

1. to any **auto** owned or operated by a self-insurer under any Motor Vehicle Financial Responsibility Law, or Motor Carrier Law, or similar laws;

2. to any **auto** used as a residence or premises;

3. to any **auto** owned by **you** or furnished for **your** regular use and not insured for Uninsured Motorist coverages under this policy. This exclusion also applies to any **auto** owned by or furnished for the regular use of anyone residing in **your** household unless the **auto** is insured for these coverages under this policy. This includes any **trailer** used with that **auto**;

4. if **you** or **your** legal representative make a settlement with any person or organization who may be liable for the **bodily injury** or **property damage** without our written permission;

5. to any Workers' Compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under a Worker's Compensation disability benefits or similar law;

6. when **your auto** is used to carry persons or property for a fee, or while leased, rented or hired to others without **our** permission. Sharing expense car pools will not be considered carrying persons for a fee;

7. when **you** are driving or using an **auto** without the permission from its owner or a person having lawful custody of the **auto**; or when the **auto** is stolen or is reasonably suspected to be stolen;

8. to **punitive** or **exemplary damages**;

9. while **you** or anyone using **your auto** is involved in the commission of a felony; or while any such person is seeking to elude lawful apprehension or arrest by any law enforcement official;

10. when **you** or any **employee** intentionally conceals or misrepresents any material fact or circumstance relating to this insurance coverage;

11. to the first $200 of the amount of **property damage** to the property of each **covered person** as a result of any one accident. This exclusion does not apply if:

    a. **your auto** is covered by this policy for collision and uninsured motorist **property damage** coverages; and

    b. the driver of the **uninsured auto** has been positively identified and is solely at fault;

12. to property contained in or struck by an **auto** (other than **your auto**) owned by **you** or members of **your** household;

13. to **bodily injury** or **property damage** sustained when any **auto** is used in preparation for, or while used in, any race, speed, stunting, pulling or any similar contest, regardless of whether such contest is impromptu, or prearranged;

14. to **bodily injury** or **property damage** resulting from intentional acts committed or carried out at the direction of **you** or any **covered person**. The expected or anticipated results of these acts or directions are not covered.

15. **bodily injury** or **property damage** that occurs, in whole or in part, because of the actual, alleged, attempted, or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of, rust, mold, mildew, wet rot or dry rot, or any other **fungi**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage;

16. any loss, cost or expense arising out of any:

    a. request, demand, or order that **you** or any person test for, monitor, clean up, remove, remedy, repair, contain, treat, detoxify, neutralize, dispose of, or in any way respond to, or assess the effects of rust, mold, mildew, wet rot or dry rot, or any other **fungi**; or

    b. fine, claim, or suit by or on behalf of any person, organization, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, remedying, repairing, containing, treating, detoxifying, neutralizing, disposing of, or in any way responding to, or assessing the effects of, rust, mold, mildew, wet rot or dry rot, or any other **fungi**.

10

## LIMITS OF LIABILITY

**Our** limit of liability for damages under Uninsured Motorist coverage shall not exceed the minimum limits required by the Uninsured Motorist Law of Arkansas unless otherwise stated in **your Declaration**.

Regardless of the number of policies **you** have with **us** or other companies, the following conditions apply to the Uninsured Motorist limits:

1. The **bodily injury** liability limit shown for any one person is the maximum **we** will pay for all legal damages, except **punitive** or **exemplary damages**, arising out of **bodily injury** sustained by any one person as the result of any one accident.

   Subject to the limit per person, the limit of liability shown in the **Declaration** for each accident is **our** maximum limit of liability for all damages for "**bodily injury**" resulting from any one accident.

   The **Property Damage** limit is the actual cash value of **your auto** or its damaged parts, not to exceed the limit per accident shown on **your Declaration**.

2. The limits of liability will not add, stack, pyramid or in any way be increased even if:

   a. there is more than one **auto** on **your Declaration** and a separate premium charged for each;

   b. there is more than one person protected by **your** policy;

   c. there is more than one person injured in an **auto** accident;

   d. **you** have other policies with **us** or other companies.

3. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

   a. paid because of **bodily injury** or **property damage** by or on behalf of persons or organizations who may be legally responsible;

   b. **covered persons** are entitled to recover from any person insured under **Bodily Injury** Liability Coverage of this policy;

   c. paid under the Collision Coverage of this policy or any similar coverage under any other policy.

4. Medical expenses paid or payable under the Personal Injury Protection Coverages will not be paid as damages under this coverage.

## OTHER INSURANCE

If **you** sustain **bodily injury** while **occupying an auto** not owned by **you** or any **covered person**, this coverage will be:

   a. excess over any uninsured motorist coverage which applies to the **auto** as primary coverage; but

   b. only for the amount by which this coverage exceeds the primary coverage.

Except as stated in the preceding paragraph, in any accident in which other insurance similar to that provided in this coverage is available under a policy issued by another company or governmental self-insurance as required by Arkansas Code ann. § 21-9-303, **we** will be liable for only **our** proportional share of the damages. This share will be determined by **our** proportion of the total insurance available. Total damages in any such accident will be considered not to exceed the highest limits available in any one of all policies applicable.

However, this coverage applies as primary coverage if any **covered person** sustains **bodily injury** while occupying a temporary substitute **private passenger auto** loaned to **you** or any member of **your** family living in **your** household by a legally licensed automobile dealer for use as:

1. a replacement for your **private passenger auto** while it is out of use due to its breakdown, repair or servicing; or

2. a demonstrator **private passenger auto**.

For any accident for which Uninsured Motorist Coverage is available under this policy or another policy issued by us to you or any **covered person**, we will not pay more than the highest limit available in any one policy.

# Underinsured Motorist Coverage

**We** will pay damages for **bodily injury** which a **covered person** is legally entitled to recover from the owner or operator of an **underinsured auto**. **Bodily injury** must be caused by an accident arising out of the ownership, maintenance or use of the **underinsured auto**.

We will pay under this coverage only after the limits of liability under any applicable **bodily injury** liability bonds or policies have been exhausted by payment of judgments or settlements.

**We** will pay damages for **bodily injury** sustained while **occupying** a temporary substitute **private passenger auto** loaned to **you** or any member of **your** family living in **your** household by a legally licensed automobile dealer for use as:

a. a replacement for **your private passenger auto** while it is out of use due to its breakdown, repair or servicing; or

b. a demonstrator **private passenger auto.**

### COVERED PERSONS

We will provide coverage for:

1. **you** or any member of **your** family residing in **your** household;

2. any person while **occupying your auto** with **your** permission.

### ADDITIONAL DEFINITIONS

Except with respect to the terms defined below, the definitions shown in this **auto** policy booklet also apply to this coverage.

1. "**Underinsured auto**" means an **auto** insured at the time of the accident for **bodily injury** by a liability bond, or policy, or governmental self-insurance as required by Arkansas Code ann. § 21-9-303. However, liability provided by the bond, policy, or agreement is less than the amount of total **bodily injury** damages **you** are legally entitled to collect. "**Underinsured auto**" does not mean:

a. a farm type tractor;

b. a vehicle designed for use off public roads;

c. a vehicle operated on crawler treads or rails;

d. a vehicle insured on this policy.

2. "**Uninsured auto**" means:

a. an **auto** not insured by a liability policy or

to which a liability bond does not apply at the time of accident;

b. a "hit and run" **auto,** whose owner or driver remains unknown, which has actual physical contact with **you** or **your auto**;

c. an **auto** for which an insuring or bonding company or governmental self-insurance as required by Arkansas Code ann. § 21-9-303 denies coverage, or is, or becomes insolvent or bankrupt.

### COVERAGE EXCLUSIONS

Underinsured Motorist Coverage does not apply to:

1. accidents involving an **uninsured auto**;

2. any **auto** used as a home or living quarters;

3. any person while **occupying** or when struck by an **auto**, owned by or furnished for the regular use of a **covered person**, that is not an insured **auto** under this coverage;

4. any person while **occupying your auto** when used to carry persons or property for a fee or while leased, rented, or hired to others without **your** permission. Shared expense car pools will not be considered as carrying passengers for a fee;

5. an **auto** a **covered person** is driving or using without the permission of its owner or a person having lawful custody of the **auto**; or when the **auto** is stolen or is reasonably known to be stolen;

6. **punitive** or **exemplary damages**;

7. **you** or anyone **using your auto** while involved in the commission of a **felony**; or while any such person is **seeking to elude** lawful apprehension or arrest by any law enforcement official;

8. **bodily injury** when any **covered person** intentionally conceals or misrepresents any material facts or circumstances relating to this insurance coverage;

9. any **auto** used in preparation for, or while used in, any race, speed, stunting, pulling or any similar contest, regardless of whether such contest is impromptu or prearranged;

10. **bodily injury** resulting from intentional acts committed or carried out at the direction of **you** or any **covered person**. The expected or unexpected results of these acts or directions are not covered.

11. **bodily injury** or **property damage** that occurs, in whole or in part, because of the actual, alleged, attempted, or threatened inhalation of, ingestion of, contact with, exposure to, existence of , or presence of, rust, mold, mildew, wet rot or dry rot, or any other **fungi**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage;

12. any loss, cost or expense arising out of any:

a. request, demand, or order that **you** or any person test for, monitor, clean up, remove, remedy, repair, contain, treat, detoxify, neutralize, dispose of, or in any way respond to, or assess the effects of rust, mold, mildew, wet rot or dry rot, or any other **fungi**; or

b. fine, claim, or suit by or on behalf of any person, organization, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, remedying, repairing, containing, treating, detoxifying, neutralizing, disposing of, or in any way responding to, or assessing the effects of, rust, mold, mildew, wet rot or dry rot, or any other **fungi**.

## LIMITS OF LIABILITY

**Our** limits of liability for damages under Underinsured Motorist Coverage losses shall not exceed the Underinsured Motorist liability limits shown on **your** latest policy **Declaration**.

Regardless of the number of policies **you** have with **us** or other companies and regardless of the number of **autos** or **covered persons** under this coverage, the following conditions apply:

1. The **bodily injury** liability limit shown for any one person is the maximum **we** will pay for all legal damages, except **punitive or exemplary damages**, arising out of **bodily injury**

sustained by any one person as the result of any one accident. Subject to the limit per person, the limit of liability shown in the **Declaration** for each accident is the maximum limit of liability for all damages for **"bodily injury"** resulting from any one accident.

2. The limits of liability will not add, stack, pyramid or in any way be increased even if:

a. there is more than one **auto** on **your Declaration** and a separate Underinsured Motorist premium is charged for each; or

b. there is more than one person protected by **your** policy; or

c. there is more than one person injured in an **auto** accident; or

d. **you** have other policies with **us** or other companies.

3. Any insurance afforded under this coverage shall apply over and above any amounts available to **you** or any **covered person** because of the **bodily injury** from or on behalf of persons or organizations who may be legally responsible.

## CHANGES IN CONDITIONS

All other general policy conditions apply except as described below.

1. OTHER INSURANCE

If there is other applicable similar insurance on a covered loss, **we** will pay only that portion of the damages that **our** limit of liability bears to the total limits of all applicable similar insurance. Any insurance afforded under this coverage for an **auto you** do not own is excess over any other applicable similar insurance.

However, this coverage applies as primary coverage if any **covered person** sustains **bodily injury** while occupying a temporary substitute **private passenger auto** loaned to **you** or any member of **your** family living in **your** household by a legally licensed automobile dealer for use as:

(1) a replacement for **your private passenger auto** while it is out of use due to its breakdown, repair or servicing; or

13

(2) a demonstrator **private passenger auto**.

2. **NOTICE REQUIREMENTS AND SETTLE-MENT OF LOSS**

You must provide **us** written notice if **you** reach, or if the **covered person** reaches, a tentative agreement to settle the loss with the owner, operator or liability insurer of the **underinsured auto**.

The written notice must be by registered or certified mail, return receipt requested, and include:

a. written documentation of the pecuniary losses incurred, including copies of all medical bills; and

b. written authorization or court order authorizing **us** to obtain medical reports from all employers and medical providers; and

c. written confirmation from the underinsured motorist's liability insurance carrier confirming the alleged underinsured motorist's liability limits and the terms of the tentative settlement.

Within thirty (30) days of receipt of the written notice, **we** may pay to **you** or the **covered person** an amount equal to the tentative settlement. If **we** pay to **you** or the **covered person** the amount of the settlement, **we** shall be entitled to the right of recovery **you** or any **covered person** may have against the owner, operator or liability insurer of the **underinsured auto**. Our right to recover any payments or benefits **we** provide to **you** or the **covered person** under this coverage will be limited to the amount of any such payments. However, if the owner or operator of the insured auto is insured by **us** for liability coverage, this provision shall not apply. **You**, or the **covered person** may proceed with a claim for damages under this coverage anytime after settlement of the claim for damages under the liability coverage applicable to the owner or operator of the **underinsured auto**.

If **we** fail to pay **you** or the **covered person** the amount of the tentative tort settlement **you** reach with the owner, operator or liability insurer of the **underinsured auto** within thirty (30) days, **we** have no right to:

a. the proceeds of any settlement or judgement between **you** and the owner or operator and/or such owner's or operator's liability insurer;

b. otherwise recoup the amount of the Underinsured Motorist Coverage benefit **we** may pay from such other owner or operator or insurer;

c. refuse payment of **our** Underinsured Motorist Coverage benefit by reason of the settlement made by **you**.

# PHYSICAL DAMAGE COVERAGES

Please review **your** latest policy **Declaration** to determine if **you** have comprehensive and/or collision coverage. **Your** policy **Declaration** will also indicate the amount of any **deductible** which may apply.

## COMPREHENSIVE – COVERAGE D

This coverage pays for direct and accidental loss of or damage to **your auto** and its covered **equipment** not caused by collision or upset. Loss or damage due to hitting or being hit by a bird or animal is payable under this coverage. **We** will pay actual cash value of loss or damage less any **deductible** shown on **your Declaration**. **We** will pay reasonable expenses to protect **your auto** from more damage.

If **your auto** is stolen, **we** will pay **you** for transportation expenses. **We** will pay up to $15 per day, not to exceed $300 per occurrence. Payment begins 48 hours after **you** tell **us** and the police about the theft. Payment ends when the **auto** is returned for **your** use or when **we** offer to pay **you** for its loss or when the maximum benefit is used, whichever occurs first.

## COLLISION – COVERAGE E

This coverage pays for direct and accidental collision or upset which causes loss or damage to **your auto** and its covered **equipment**. For each accident **we** will pay actual cash value of loss or damage less **your deductible** amount.

## Waiver of Deductible

No **deductible** will apply to a collision loss when:

14

1. **your private passenger auto** collides with another **private passenger auto** insured by **us;**

2. damage to **your auto** is caused by an uninsured **auto;** provided

   a. **Your auto** is insured by us for collision and Uninsured Motorist Property Damage Coverage; and

   b. the operator of the **uninsured auto** is positively identified and is solely at fault.

### Emergency Road Service

If **your private passenger auto** has collision coverage and is disabled we will pay reasonable expenses for:

1. delivery of gasoline, oil, battery or tires, not to exceed $25. We will not pay the cost of such items;

2. mechanical labor, not to exceed one hour performed at the place of breakdown;

3. towing to the nearest garage or service station where the necessary repairs can be made if **your auto** is not driveable. We will pay up to $50 for such towing.

Emergency Road Service coverage is not subject to a **deductible.**

### COMPREHENSIVE AND COLLISION COVERAGE EXTENSIONS

When **your** policy insures a **private passenger auto** for Comprehensive and/or Collision Coverage **we** will provide those same coverages for use of other **private passenger autos.** These extensions do not apply to the use of any **auto** in connection with an **auto business.**

1. Use of Other **Private Passenger Autos.**

   Coverage applies to **you** or dependent relatives living in **your** household while using another **private passenger auto.** However, the **private passenger auto** cannot be:

   a. owned by **you** or dependent relatives of **your** household; or

   b. furnished or available for regular use by **you** or dependent relatives of **your** household.

   This extension applies only on policies issued to individual persons, not organizations.

2. Temporary Substitute **Private Passenger Autos.**

   **You** and dependent relatives living in **your** household have coverage for the use of a **private passenger auto** while it is a temporary substitute for **your private passenger auto.** **Your private passenger auto** must be out of use because of breakdown, repair, servicing, loss or destruction.

   The temporary substitute **private passenger auto** cannot be:

   a. owned by **you** or dependent relatives of **your** household; or

   b. made available for the regular use of **you** or dependent relatives of **your** household.

3. Additional or Replacement **Private Passenger Autos.**

   When **you** acquire an additional or replacement **private passenger auto,** coverage applies for thirty (30) days after its delivery or until the expiration date or cancellation date of this policy, whichever occurs first, when:

   a. **you** tell **us** about the additional or replacement **private passenger auto** before the end of the thirty (30) days, or the expiration date or cancellation date of this policy, whichever occurs first; and

   b. **you** pay any additional premiums due.

### CARGO COVERAGE

If **you** have either comprehensive or collision coverage, **we** will pay up to $250 per accident for all damages to feed, seed, fertilizer, insecticides, farm produce and livestock being hauled in **your** pickup truck. Cargo loss must be a direct result of a covered loss to **your** pickup truck. The items damaged must be owned by **you.** This coverage is not subject to a **deductible.** This coverage does not apply to loss from theft unless **your** pickup truck is stolen. **We** will pay the insured loss or damages not covered by other insurance.

15

## RENTAL AND TRAVEL EXPENSE COVERAGE

**You** have this coverage when **you** pay the additional premium required for each qualified **private passenger auto**. To be qualified, **your private passenger auto** must have Comprehensive and Collision Coverage. Check **your** latest policy **Declaration** in the coverages section to determine if this coverage applies to **your private passenger auto(s)**. If this coverage is not shown in the coverage section, coverage does not apply.

### Rental Expense

This coverage pays **you** for rental of **a private passenger auto** from an auto rental agency when **your private passenger auto** is damaged from a covered Comprehensive or Collision loss. We will pay **you** up to $20 per day for rental expense. Coverage starts when **your private passenger auto** cannot be driven because of the **covered loss** or if it can be driven, when **you** leave it at the shop for a related covered repairs.

Coverage ends on the day:

1. **your private passenger auto** has been repaired or replaced; or,

2. if not repaired, when we offer to pay **you** for the **covered loss**;
   whichever comes first.

### Travel Expense

This coverage pays **you** when **your private passenger auto** cannot be driven because of a covered comprehensive or collision **loss**. The **loss** must occur more than 100 miles from **your** home. Beginning on the date of **loss**, **we** will pay for:

1. commercial transportation fares to take **you** to **your** destination or return **you** to **your** home;

2. extra meals and lodging needed when the loss to **your private passenger auto** causes a delay in **your** travels. The expenses must be incurred between the **time** of the **loss** and arrival at **your** destination, or home, or by the end of the fifth day following the comprehensive or collision loss, whichever occurs first;

3. meals, lodging and commercial transportation fares incurred by **you** or a person **you** choose to drive **your private passenger auto** from the place of repair to **your** destination or home.

### Total Amount of Expenses Payable

**We** will pay no more than $600 total for rental and travel expense incurred by all persons as a result of any one **covered loss**. This amount is the total payable for each **private passenger auto** having this coverage. Regardless of the number of policies or the number of persons or **autos you** have insured with **us**, Rental and Travel Expense Coverage will not add, stack or be increased in any way. Any transportation expenses payable under this coverage will be reduced to the extent it is payable under Comprehensive coverage when **your auto** is stolen.

This coverage is subject to the Definitions, Exclusions and General Policy Conditions set forth in the policy. For the purpose of this coverage, **loss** or **covered loss** refers to each direct and accidental Comprehensive or Collision loss to **your private passenger auto**.

## COMPREHENSIVE AND COLLISION COVERAGE EXCLUSIONS

**We** will not pay for loss or damage:

1. to a camper trailer or any other type of trailer unless shown on **your** latest policy **Declaration**;

2. caused by wear and tear, freezing, mechanical or electrical breakdown or failure, or road damage to tires, unless such damages result from a comprehensive or collision loss covered by this policy;

3. to clothes or personal effects;

4. while **your auto** is used to carry persons or property for a fee, or while leased, rented or hired to others without **our** permission. Shared expense car pools will not be considered carrying persons for a fee;

5. to any **auto** used in preparation for, or while used in, any race, speed, stunting, pulling or any similar contest, regardless of whether such contest is impromptu or prearranged.

6. when **you** or any **employee** intentionally conceals or misrepresents any material fact or circumstance relating to this insurance coverage;

7. while **you** are driving or using an **auto** without permission from its owner or when the **auto** is stolen or is reasonably known to be stolen;

16

8. while **you** or anyone using **your auto** with **your** permission is involved in the commission of a felony; or while any such person is seeking to elude lawful apprehension or arrest by any law enforcement official;

9. due to the taking or use of **your auto** by any government authority, its agencies, departments or services;

10. to headlights unless such damage occurs at the same time as another comprehensive or collision loss;

11. resulting from intentional acts committed by or carried out at the direction of **you** or any **covered person**. The expected or unexpected results of these acts or directions are not covered.

12. arising out of nuclear action, radiation, radioactive contamination, the discharge of a nuclear weapon, even if accidental, or any consequence of any of these;

13. arising out of war (declared or undeclared), civil war, civil unrest, riot, insurrection, rebellion, revolution, or any consequence of any of these;

14. to **equipment** designed or used for detection or location of radar, laser, or other speed detection devices used by police;

15. to tapes, records, discs or other media used with audio or video **equipment**. **We** do not cover the value, or the cost of reproducing data, records, sound or video stored on such media.

16. due to **diminution in value**. "Diminution in value" means the actual or perceived loss in market or resale value.

## LIMITS OF LIABILITY

**Our** duty to pay for comprehensive or collision loss is limited to the actual cash value of the **auto** or its damaged parts at the time of loss.

Actual cash value will include consideration of fair market value, age, and condition of the item in question at the time of loss or damage. **We** may pay **you** directly for loss or damage, or **we** may pay **you** the amount necessary to repair or replace the **auto** or its damaged part(s) with like kind and quality. If **you** have comprehensive and/or collision coverage

on **your auto**, **we** will provide those same coverages for loss to a camper shell or camper living quarters which is not shown as insured on **your** latest policy **Declaration**. The camper shell or camper living quarters must be owned by **you** and designed to be mounted in or on the bed of **your auto**. **Our** limit of liability for such loss will be the actual cash value, not to exceed $750 per occurrence. A **deductible** will not apply.

If **your** stolen property is recovered prior to any loss settlement, **we** may return the property at **our** expense. **We** will pay for any damage because of theft.

## OTHER INSURANCE

When there is other insurance for any loss or damage to which this coverage applies, **we** will pay for only **our** proportional share of the loss or damage. That share is determined by **our** proportion of the total insurance collectible for the loss.

For losses or damages involving the use of other **autos**, additional **autos**, replacement **autos** or temporary substitute **autos**, **we** will pay the insured loss or damage not covered by other insurance.

However, this policy shall provide primary coverage on a temporary substitute **private passenger auto** loaned to **you** or any member of **your** family living in **your** household by a legally licensed automobile dealer for use as:

1. a replacement for **your private passenger auto** while it is out of use due to its breakdown, repair or servicing; or

2. a demonstrator **private passenger auto**.

## REPAIR OF YOUR AUTO

IN THE REPAIR OF **YOUR** AUTO UNDER THE PHYSICAL DAMAGE COVERAGE PROVISION OF THIS POLICY, **WE** MAY REQUIRE OR SPECIFY THE USE OF MOTOR VEHICLE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

17

# GENERAL POLICY CONDITIONS

**We, you** and any **covered person** must comply with the following conditions in order for the policy to apply.

1. Premium.

   The premium for this policy is based on information **we** have received from **you** or other sources. If the information is incorrect or incomplete, or changes during the policy period, **you** must inform **us** of any changes regarding the following:

   a. **your auto,** or its use;

   b. the persons who regularly drive **your auto,** including newly licensed family members;

   c. **your** marital status;

   d. the location where **your auto** is principally garaged.

   **You** agree that if this information or any other information used to determine the premium is incorrect or incomplete, or changes during the policy period, **we** may decrease or increase the premium during the policy period based upon the corrected, completed or changed information. **You** agree that if the premium is decreased or increased during the policy period, **we** will refund or credit **you** any decrease in premium, and **you** will pay for any increase in premium.

2. Policy Period, Premium Payments and Expiration of Coverage.

   This policy applies to accidents which occur during the policy period. Unless cancelled, this policy may be renewed at our option if the required renewal premium is paid by **you** and accepted by **us.** Failure to pay the renewal premium within the time allowed will terminate coverage as of the expiration date. If **your** policy does expire and **you** later send a payment of the required premium, **we** may reinstate **your** policy, at **our** option, effective on the date and time payment is received. A new policy period will then have been established.

3. Non-Renewal.

   **We** may elect not to renew this policy. **We** may do so by delivering to **you,** or mailing to **you,** written notice at least twenty (20) days before the expiration date of the policy period. Notice will be delivered or mailed to **your** last known mailing address shown in **our** records. Proof of mailing will be sufficient proof of notice. The policy period will end on the date and time stated in the notice.

4. Cancellation of Coverage During the Policy Period.

   a. **Your** Right to Cancel

   **You** may cancel this policy at any time by written notice mailed or delivered to **us. You** must tell **us** in the notice the date **you** want the coverage cancelled.

   b. **Our** Right to Cancel

   **We** may cancel this policy for one or more of the following reasons:

   (1) Non-payment of premium;

   (2) When **you** or any driver of **your auto** is convicted of:

   (a) driving while intoxicated;

   (b) homicide or assault arising out of the use of an auto;

   (c) three separate convictions of speeding or reckless driving or any combination of the two during the policy period and including three (3) months prior to the effective date of the policy;

   (3) When **you** or any operator who either resides in the same household or customarily operates an automobile insured under this policy has had his or her driver's license or motor vehicle registration suspended or revoked during the policy period  or, if the policy is a renewal, during its policy period or the 180 days immediately preceding its effective date. However, **we** will not cancel this policy solely because of the administrative suspension or revocation of the driver's license due to the influence or use of alcohol or a controlled substance as set forth in Arkansas Code ann. §5-65-104;

18

(4) fraud or misrepresentation of a material fact the knowledge of which would have caused **us** to decline to issue a policy;

(5) nonpayment of County Farm Bureau membership dues;

(6) any other reasons allowed by law or approved by the Commissioner of Insurance.

5. Notice of Cancellation

If **you** fail to pay any premium which is due during the policy period **we** may cancel **your** policy by giving **you** at least ten (10) days notice of cancellation.

If **we** cancel **your** policy for a reason described in 4b. **Our Right to Cancel**, reasons (2) through (6) above, **we** will notify **you** in writing at least twenty (20) days before the date of cancellation.

Notice of cancellation will be delivered or mailed to **your** last known mailing address shown in **our** records. Proof of mailing will be sufficient proof of notice. The policy period will end on the date and time stated in the notice.

6. Return of Premium

When this policy is cancelled, the premium for the unexpired time in the policy period is refunded on a pro-rata basis. If the return premium is not refunded with notice of cancellation, **we** will refund it within a reasonable time after the date of cancellation.

7. Change in Policy Provisions.

A change of any provision of this policy must be in writing by **us** and be shown on an endorsement or successive **Declaration** to be valid. If a premium adjustment is necessary, **we** will make the adjustment as of the effective date of the change.

8. Joint and Individual Interests.

In the event there is more than one **named insured** shown on the **Declaration** page, each **named insured** shown on the **Declaration** page shall be able to act for the other(s) to make a change to, or cancel, this policy.

9. Liberalization.

**You** will automatically have the benefit of any

extension or broadening of coverage in this policy, as of the effective date of the change, provided it does not require additional premium.

10. Conformity to Statutes.

**We** will change any terms or conditions of **your** policy conflicting with the laws of the State of Arkansas, to bring them into conformity with such laws.

11. Your Duties After Loss.

In case of a covered loss, **you** must:

a. as soon as possible after the loss, give **us** or **our** agent **your** signed and sworn statement of loss. The statement will be on forms supplied by **us**. The statement will give **us**:

(1) **your** name; and

(2) the names and addresses of all persons involved; and

(3) the hour, date, place and facts about the accident or loss; and

(4) the names and address of witnesses, if any; and

(5) information about any other insurance which may cover the loss.

b. protect **your** property from more damage;

c. show **us**, or anyone named by **us**, the damaged property as often as **we** may require;

d. provide **us** with all records and documents **we** request which relate to **your** claim for loss or damage. **You** agree to permit **us** to make copies and obtain any releases necessary for records and documents **we** request in **our** investigation of **your** loss;

e. submit to examination by doctors selected by **us** as often as **we** may require. Injured persons must grant **us** permission to obtain copies of wages and medical reports and records if **we** make such a request;

f. submit to questioning, under oath, if **we** require. Questioning may be administered

19

by any person named by **us**. You must sign any written copy of the questioning. If more than one person is questioned, **we** have the right to question and receive statements separately from each person and not in the presence of others;

g. promptly deliver to **us** all papers in connection with any claims or suits;

h. when **we** request, assist **us** in all respects in the investigation, legal defense or settlement of the claim or suit. This includes producing, for examination under oath, members of **your** household, **employees** or others who have knowledge of the claim.

12. Theft Warranty.

**You** warrant and agree to give prompt notice to the local police in the event of theft.

13. Suit Against the Company.

**You** may not bring legal action against **us** for any of the coverages provided in this policy until **you** comply with all terms of this policy.

No legal action may be brought by **you** or any **covered person** against **us** under the liability coverage, until the amount of damages **you** are legally liable to pay has been finally determined by:

a. judgment after actual trial, and appeal if any; or

b. agreement between **you**, the claimant and **us**.

No one can make **us** a party to any suit to determine **your** liability:

a. under Personal Injury Protection Medical Coverage, until thirty (30) days after **we** get the required proofs of loss;

b. under Physical Damage Coverages, until thirty (30) days after **we** get proof of claim and the amount of loss is determined by the terms of this policy.

14. Abandonment of Property

**We** will not accept any property abandoned by **you**.

15. Bailee.

**We** will not recognize any assignment or grant

any coverage for the benefit of any person or organization, other than **your** holding, storing or transporting property for a fee regardless of any other provision of this policy.

16. Subrogation.

If **we** make a payment under any of the coverages set forth in this policy and the person to or for whom payment was made has a right to receive damages from another, **we** shall be subrogated to that right. The coverages include but are not limited to Uninsured Motorist Coverage, Personal Injury Protection Coverage and Physical Damage Coverage. **You** shall sign and deliver all related papers and work with **us** in any reasonable manner to secure **our** rights. **We** will not be liable for payment of the loss If **you** do anything after the loss to impair **our** right to recover. **We** will be entitled to recovery only after the **covered person** has been made whole.

**We** may also require payment from **you** if any settlement or judgment duplicates **our** payments. These provisions will be applied according to state law.

17. Declaration.

By accepting this policy, **you** agree that the statements in the **Declaration** are **your** agreements and representations.

This policy is issued in reliance upon the truth of **your** presentations. It contains all agreements existing between **you** and **us**.

18. Assignment.

**Your** rights and duties under this policy may not be transferred without **our** written consent. However, if **your** coverage will be provided until the end of the premium period for:

1. **your** surviving spouse if a resident of **your** household at the time of **your** death; and

2. **your** legal representative while acting within the scope of his/her duties as your representative to maintain or use **your auto**; and

3. other persons shown as **covered persons** on **your** policy **Declaration** on the date of **your** death who have proper temporary custody of **your auto**.

20

19. Loss Payee Clause

If there is a loss payee shown on the **Declaration**, **we** will repair the insured property or pay any loss payable to the loss payee and **you** as interests appear. This provision applies only to property shown on the **Declaration** as subject to the security interest of the loss payee. If more than one loss payee for the property is shown on the **Declaration**, the order of **our** payment to each loss payee is the same as the order of precedence of the security interest.

If **we** deny **your** claim, that denial does not apply to a valid claim under the policy by the loss payee, if the loss payee:

1. notifies **us** of any change in ownership or substantial change in risk of which the loss payee is aware;

2. pays any premium due under this policy on demand by **us**;

3. submits a signed, sworn proof of loss within sixty (60) days after receiving notice from **us** of **your** failure to do so;

4. fully cooperates with **us** in the investigation or settlement of a comprehensive or collision loss.

If **we** pay the loss payee for any loss and deny payment to **you**:

1. **we** are subrogated to all the rights of the loss payee granted under the mortgage, lien, promissory note or debt on the property;

2. at **our** option, **we** may pay to the loss payee the debt secured by the mortgage, lien, or promissory note plus any accrued interest. In this event, **we** are entitled to receive a full endorsement and/or assignment of the mortgage, lien, note or debt, and other security to the extent of **our** payment to the loss payee;

3. if **we** later determine that **we** owe **your** claim for loss, **we** will release the rights, assignment, security and lien **we** have obtained from the loss payee.

**We** reserve the right to cancel or refuse to renew this policy anytime as provided by its terms. If **we** cancel this policy, or the policy

expires for any reason. **we** will provide written notice to any loss payee shown on the **Declaration**. **We** agree to mail a ten (10) day written notice if **we** cancel this policy, or the policy expires, for non-payment of premium. If **we** cancel for any other reason or refuse to renew the policy, **we** will mail a twenty (20) day written notice.

Subrogation will not impair the right of the loss payee to recover the full amount of the loss payee's claim.



## COUNTY FARM BUREAU MEMBERSHIP

As a prerequisite to **your** purchase of this policy and any renewal of insurance hereunder, **you** must make application to be a member of and maintain **your** membership in the applicable local county Farm Bureau agricultural organization and affiliated state Farm Bureau agricultural organization (hereinafter collectively "Farm Bureau Federation"). **Your** failure to apply for membership and maintain **your** membership with the applicable Farm Bureau Federation as **our** sponsoring organization, including but not limited to **your** failure to pay the required membership dues to said Farm Bureau Federation, shall require the cancellation or non-renewal of **your** policy by **us**. Dues payable to Farm Bureau Federation are in consideration of membership in Farm Bureau Federation and other agriculture related services from Farm Bureau Federation, and are not premiums; and are not consideration of coverage under this policy; and are not payable to **us**.

## PARTICIPATING CONDITION

While this policy is in force, **you** are entitled to share in net earnings and savings of the **Company**, distributed in accordance with the dividends declared by the Board of Directors.

This policy has been signed by **our** President and Secretary and countersigned on the **Declaration** by an authorized representative of the **Company**.

*Stew W. Ingram*
Secretary

*Ronald Q. Anderson*
President

Southern Farm Bureau
Casualty Insurance Company
Ridgeland, Mississippi

# Endorsements Section

The following are standard endorsements. One or more may be designated on **your Declaration**. Except as each endorsement provides, nothing in any endorsement will alter, vary, waive or extend any provisions or conditions of this policy. Please check the endorsement section of **your Declaration** to determine if any apply to **your** coverage. If the endorsement code does not appear on **your Declaration**, the endorsement does not apply.

### Government Vehicle Endorsement (Endorsement Code GO)

When this endorsement is designated on **your** latest policy **Declaration, we** will extend Bodily Injury and Property Damage Liability coverage to **you** while driving, for pleasure or personal use, an **auto** or any motorized vehicle furnished by a state or federal government. This includes any political subdivision of either. Use of any **auto** for any state or federal government business or duties is not covered.

**We** will not cover the liability of any other person or organization other than **you**. If at the time of any covered accident there is other liability insurance which applies, the insurance from this endorsement will be considered as excess coverage over all other insurance. This coverage will not apply until all other applicable insurance has been exhausted.

An additional premium will be charged for this endorsement.

Nothing herein contained shall alter, vary, waive or extend any provision or condition of the policy except as herein provided.

### Carrying Passengers for Consideration Endorsement (Endorsement Code CP)

When this endorsement is designated on **your** latest **Declaration we** will extend coverage for the use of **your auto** for the private transportation of persons for a fee.

22

Any fees paid by the passengers must be nominal. Such transportation must: (a) be incidental to **your** personal journeys; (b) not be solely for the purpose of carrying persons for a fee or other compensation; or (c) not be that of a public or common carrier for hire.

An additional premium will be charged for this endorsement.

Nothing herein contained shall alter, vary, waive or extend any provision or condition of the policy except as herein provided.

## Service Person's Endorsement (Endorsement Code SP)

When this endorsement is designated on the **Declaration**, coverage for **your auto** is amended in regard to **covered persons**. Except while **your auto** is used on a military post, this policy provides no coverage for **your auto** when driven by anyone other than **you** or members of **your** household.

This endorsement will not penalize the interest of a loss payee having a security interest in **your auto**. However, we must be aware of the loss payee prior to any accident or the loss payee must be shown on the **Declaration** for **your auto** with Endorsement SP.

Nothing herein contained shall alter, vary, waive or extend any provision or condition of the policy except as herein provided.

## Fire, Theft & Combined Additional Coverage (Endorsement Code FTCAC)

**Your auto** will have the following coverages when Coverage FTCAC is designated on **your Declaration**:

1. FIRE, LIGHTNING AND TRANSPORTATION: Fire, Lightning and Transportation Loss of or damage to **your auto** caused by: (a) fire or lightning; (b) smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which **your auto** is located; or (c) by the stranding, sinking, burning, collision or derailment of any conveyance in or upon which **your auto** is being transported on land and water.

2. THEFT: Loss of or damage to **your auto** caused by theft, larceny, robbery or pilferage.

3. COMBINED ADDITIONAL COVERAGE: Loss of or damage to **your auto** caused by windstorm, earthquake, hail, external discharge or leakage of water, flood or rising waters, riot or civil commotion, or the forced landing or falling of any aircraft or of its parts or equipment, or malicious mischief or vandalism.

Nothing herein contained shall alter, vary, waive or extend any provision or condition of the policy except as herein provided.

## Non-Ownership Liability and Personal Injury Protection Coverages (Endorsement Code NO)

This endorsement extends Bodily Injury and Property Damage Liability and Personal Injury Protection Coverages for non-owned **autos**. The non-owned **auto** must be furnished for **your** regular use. Coverage extends to use of the non-owned **auto** by **you** and by dependents while residents of **your** household. This endorsement applies only while the non-owned **auto** is used for pleasure driving. Business use is not covered.

If at the time of accident there is other insurance in force which provides liability or personal injury protection to **your auto**, this endorsement will not apply.

An additional premium will be charged for this endorsement.

Nothing herein contained shall alter, vary, waive or extend any provision or condition of the policy except as herein provided.

## Recreational Vehicle (Endorsement Code RV)

Any **recreational vehicle** described on **your** latest policy **Declaration** with Endorsement Code RV, will be provided the **coverages** indicated on the **Declaration** subject to the following provisions:

1. ADDITIONAL DEFINITIONS:

   The Definitions Section is amended as follows:

   a. Solely with respect to this endorsement **recreational vehicle** means:

      (1) All-Terrain Vehicle (ATV) – A self-propelled land motor vehicle designed for

recreational use, capable of traveling over rugged terrain and moving through water and used principally off public roads, OR;

(2) Dune Buggy — A four-wheeled, self-propelled land motor vehicle used principally off public roads, OR;

(3) Mini-bike — A small two-wheel motorcycle or motorscooter used principally off public roads, OR;

(4) Trail Bike — A two-wheel motorcycle capable of traveling over rugged terrain and used principally off public roads, OR;

(5) Golfmobile — A self-propelled vehicle used principally to afford transportation on a golf course or private premises, OR;

(6) Snowmobile — A self-propelled vehicle used principally off public roads for transportation over snow covered terrain.



b. Solely with respect to this endorsement, the definition of "**auto**" shall include **recreational vehicle**.

2. ADDITIONAL EXCLUSIONS:

This endorsement does not apply:

a. Under any coverages while any **recreational vehicle** covered by this policy is being operated in, or while in practice or preparation for, any hill-climbing or jumping contest or any racing or speed contest, regardless of whether such contest is impromptu or pre-arranged.

b. Under Personal Injury Protection, Accidental Death Benefits, and Income Disability Benefits.

Nothing herein contained shall alter, vary, waive, or extend any provision or condition of the policy except as herein provided.

24

**ELECTRONICALLY FILED**
Craighead County Circuit Court in Jonesboro
David Vaughn, Craighead Circuit Clerk
2024-Jan-08  10:05:59
16JCV-24-3
C02D01 : 12 Pages

# EXHIBIT 2

# Vehicle Valuation Report

Prepared For



mitchell

## Claim Information

| Claim Number | Policy Number | Loss Type | Claimant |
|---|---|---|---|
| 03A01202062-1 | MV00198002 | COLLISION | DON DONLEY<br>Little Rock, AR |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 06/02/2020 | 06/02/2020 | 06/03/2020 | 12343724 | 1 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2017 | Dodge | Journey SE 4 Door Utility 114" WB 2.4L 4 Cyl Gas A FWD | AR 72117 | 56,222 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| White | | 3C4PDCAB0HT701771 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---:|
| Base Value = | $11,166.15 |
| Condition | $0.00 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $11,166.15 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---:|
| Deductible - | $500.00 |
| Settlement Value = | $10,666.15 |

## Settlement Value:
# $10,666.15

Mitchell **WorkCenter**
Total Loss
© 2018 Mitchell International, Inc. All Rights Reserved.

# Loss Vehicle Detail

Loss vehicle: 2017 Dodge Journey | SE 4 Door Utility 114" WB | 2.4L 4 Cyl Gas A FWD

## Standard Equipment

### Exterior

| | |
|---|---|
| 17" wheel covers | Black Power Heated Side Mirrors w/Manual Folding |
| Black Side Windows Trim | Body-colored door handles |
| Body-Colored Front Bumper w/Metal-Look Bumper Insert | Body-Colored Rear Bumper |
| Chrome grille | Clearcoat paint |
| Compact Spare Tire Stored Underbody w/Crankdown | Deep tinted glass |
| Fixed Rear Window w/Fixed Interval Wiper and Defroster | Fully Automatic Aero-Composite Halogen Daytime Running Headlamps w/Delay-Off |
| Galvanized Steel/Aluminum/Composite Panels | Liftgate Rear Cargo Access |
| Perimeter/Approach Lights | Roof Rack Rails Only |
| Speed sensitive variable intermittent wipers | Steel spare wheel |
| Tailgate/Rear Door Lock Included w/Power Door Locks | Tires: P225/65R17 BSW A/S Touring |
| Wheels: 17" x 6.5" Steel | |

### Interior

| | |
|---|---|
| 1 Seatback Storage Pocket | 4 12V DC Power Outlets |
| 4-Way Passenger Seat -inc: Manual Recline and Fore/Aft Movement | 4.3" Touch Screen Display |
| 40-60 Folding Split-Bench Front Facing Fold Forward Seatback Rear Seat w/Manual Fore/Aft | 5 Person Seating Capacity |
| 6 Speakers | 6-Way Driver Seat -inc: Manual Recline, Height Adjustment and Fore/Aft Movement |
| Air filtration | Audio jack input for mobile devices |
| Cargo Area Concealed Storage | Cargo Space Lights |
| Carpet Floor Trim | Compass |
| Cruise control w/steering wheel controls | Day-night rearview mirror |
| Delayed Accessory Power | Digital/Analog Display |
| Driver foot rest | Driver visor vanity mirror |
| Dual Zone Front Manual Air Conditioning | Fade-to-off interior lighting |
| Front And Rear Map Lights | Front Center Armrest and Rear Center Armrest w/Storage |
| Full Carpet Floor Covering -inc: Carpet Front And Rear Floor Mats | Full cloth headliner |
| Full Floor Console w/Covered Storage and 4 12V DC Power Outlets | Gauges -inc: Speedometer, Odometer, Oil Pressure, Engine Coolant Temp, Tachometer, Oil Temperature, Transmission Fluid Temp, Engine Hour Meter, Trip Odometer and Trip Computer |
| Graphic Equalizer | HVAC -inc: Underseat Ducts |
| Illuminated Front Cupholder | Illuminated locking glove box |
| Instrument Panel Bin, Interior Concealed Storage, Driver / Passenger And Rear Door Bins and 2nd Row Underseat Storage | Integrated Roof Antenna |
| Interior Trim -inc: Metal-Look Instrument Panel Insert, Metal-Look Door Panel Insert, Chrome And Metal-Look Interior Accents | Manual Anti-Whiplash w/Tilt Front Head Restraints and Manual Adjustable Rear Head Restraints |

| | |
|---|---|
| Manual tilt/telescoping steering column | Outside temp gauge |
| Power 1st Row Windows w/Driver 1-Touch Down | Power Door Locks w/Autolock Feature |
| Power Rear Windows and Fixed 3rd Row Windows | Premium cloth low-back bucket seats |
| Proximity Key For Doors And Push Button Start | Radio w/Seek-Scan, In-Dash Mounted Single CD, MP3 Player, Clock, Speed Compensated Volume Control, Steering Wheel Controls and Radio Data System |
| Radio: 4.3 | Rear cupholder |
| Redundant Digital Speedometer | Remote Keyless Entry w/Integrated Key Transmitter, 2 Door Curb/Courtesy, Illuminated Entry and Panic Button |
| Remote USB port | Sentry Key Engine Immobilizer |
| Systems Monitor | Trip computer |
| Urethane Gear Shift Knob | Valet Function |
| Vinyl Door Trim Insert | |

## Mechanical

| | |
|---|---|
| 1003# Maximum Payload | 160 amp alternator |
| 20.5 Gal. Fuel Tank | 4-Wheel Disc Brakes w/4-Wheel ABS, Front Vented Discs and Brake Assist |
| 4.28 Axle Ratio | 50 State Emissions |
| 525CCA Maintenance-Free Battery w/Run Down Protection | Front And Rear Anti-Roll Bars |
| Front-wheel drive | Gas-pressurized shock absorbers |
| GVWR: 5,005 lbs | Hydraulic Power-Assist Speed-Sensing Steering |
| Multi-link rear suspension w/coil springs | Normal duty suspension |
| Single stainless steel exhaust | Strut Front Suspension w/Coil Springs |
| Towing w/Trailer Sway Control | Transmission w/Autostick Sequential Shift Control and Oil Cooler |

## Safety

| | |
|---|---|
| ABS And Driveline Traction Control | Airbag Occupancy Sensor |
| Curtain 1st And 2nd Row Airbags | Driver knee airbag |
| Dual Stage Driver And Passenger Front Airbags | Dual Stage Driver And Passenger Seat-Mounted Side Airbags |
| Electronic Stability Control (ESC) And Roll Stability Control (RSC) | Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners |
| Rear child safety locks | Side impact beams |
| Tire Specific Low Tire Pressure Warning | |

# Loss Vehicle Base Value

Loss vehicle:  2017 Dodge Journey |  SE 4 Door Utility 114" WB | 2.4L 4 Cyl Gas A FWD

## Comparable Vehicle Information

Search Radius used for this valuation: 150 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle: 33,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---------------------|---------|----------|----------------------------|-------|----------------|
| 1 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 57,991 | 72601 | 115 miles | $12,000.00 Sold Price | $10,483.65 |
| 2 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 60,022 | 72117 | 0 miles | $12,900.00 List Price | $11,236.60 |
| 3 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 43,907 | 72210 | 22 miles | $11,500.00 List Price | $10,445.92 |
| 4 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 43,500 | 72143 | 41 miles | $12,500.00 List Price | $11,332.28 |
| 5 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 53,973 | 72543 | 47 miles | $13,678.00 List Price | $11,484.76 |
| 6 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 69,045 | 71913 | 56 miles | $13,973.00 List Price | $12,058.58 |
| 7 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 65,097 | 72404 | 105 miles | $12,995.00 List Price | $11,448.14 |
| 8 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 62,521 | 72476 | 112 miles | $13,988.00 List Price | $11,742.23 |
| 9 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 62,840 | 38128 | 130 miles | $13,495.00 List Price | $11,264.50 |
| 10 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4NORMAL GAS A 2WD | 71,484 | 72908 | 133 miles | $11,904.00 List Price | $10,164.84 |

**Base Value:    $11,166.15**

# Loss Vehicle Adjustments

Loss vehicle:  2017 Dodge Journey | SE 4 Door Utility 114" WB | 2.4L 4 Cyl Gas A FWD

## Condition Adjustments

Condition Adjustment:  $0.00          Overall Condition:  3.00-Good          Typical Vehicle Condition:  3.00

| Category | Condition | Comments |
|----------|-----------|----------|
| Interior | 3 Good | |
| Exterior | 3 Good | |
| Mechanical | 3 Good | |
| Tire | 3 Good | |

Typical Vehicle Condition reflects a condition similar to the same year, make and model. Amount of wear and tear/ damage consistent with its age.

Comments:

# Comparable Vehicles

Loss vehicle: 2017 Dodge Journey | SE 4 Door Utility 114" WB | 2.4L 4 Cyl Gas A FWD

| 1 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD | | Sold Price: **$12,000.00** |

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB7HTXXXXXX | | 03/16/2020 | 72601 | 115 miles |

Source

DEALER SALE - BUILDSHEET - J.D. POWER

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 56,222 | 57,991 | $67.02 |
| Equipment | | | |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,132.19 |
| POPULAR EQUIPMENT GROUP | No | Yes | -$451.18 |
| | | Total Adjustments: | -$1,516.35 |
| | | **Adjusted Price:** | **$10,483.65** |

Comparable Vehicle Package Details:

FLEXIBLE SEATING GROUP

POPULAR EQUIPMENT GROUP

| 2 | 2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD | | List Price: **$12,900.00** |

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB9HT505134 | HT505134 | 06/01/2020 | 72117 | 0 miles |

Source

DEALER WEB LISTING - BUILDSHEET - VAST.COM

MCLARTY FORD USED

4440 LANDERS ROAD

NORTH LITTLE ROCK AR 72117

855-981-4130

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$655.00 |
| Mileage | 56,222 | 60,022 | $146.90 |
| Equipment | | | |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,155.30 |
| | | Total Adjustments: | -$1,663.40 |
| | | **Adjusted Price:** | **$11,236.60** |

Comparable Vehicle Package Details:

FLEXIBLE SEATING GROUP

**3**    **2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD**      **List Price:  $11,500.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB5HT658920 | HT658920 | 05/24/2020 | 72210 | 22 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - AUTOTRADER.COM

STEVE LANDERS CHRYSLER
DODGE JEEP RAM

401 COLONEL GLENN PLAZA LOOP

LITTLE ROCK AR 72210

501-503-3245

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$584.00 |
| Mileage | 56,222 | 43,907 | -$470.08 |
| | | Total Adjustments: | -$1,054.08 |
| | | **Adjusted Price:** | **$10,445.92** |

---

**4**    **2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD**      **List Price:  $12,500.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB0HT653737 | 20087 | 05/25/2020 | 72143 | 41 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

CREEKWOOD MOTOR COMPANY

2204 S BENTON AVENUE

SEARCY AR 72143

501-593-3999

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$635.00 |
| Mileage | 56,222 | 43,500 | -$532.72 |
| | | Total Adjustments: | -$1,167.72 |
| | | **Adjusted Price:** | **$11,332.28** |

`

Mitchell **WorkCenter**
Total Loss

### 5  2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD

**List Price: $13,678.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB4HT584079 | G584079 | 05/10/2020 | 72543 | 47 miles |

Source

DEALER WEB LISTING - BUILDSHEET - AUTOTRADER.COM
COWBOY CHEVROLET BUICK GMC
1819 STATE HIGHWAY 25 BYPASS
HEBER SPRINGS AR 72543
870-509-1357

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$695.00 |
| Mileage | 56,222 | 53,973 | -$92.18 |
| Equipment | | | |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,224.93 |
| RADIO: 4.3S | No | Yes | -$181.13 |
| | | Total Adjustments: | -$2,193.24 |
| | | **Adjusted Price:** | **$11,484.76** |

Comparable Vehicle Package Details:

FLEXIBLE SEATING GROUP

Comparable Vehicle Option Details:

RADIO: 4.3S

### 6  2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD

**List Price: $13,973.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB4HT538462 | 20105A | 05/15/2020 | 71913 | 56 miles |

Source

DEALER WEB LISTING - BUILDSHEET - CARS.COM
RISER FORD LINCOLN
4201 CENTRAL AVE
HOT SPRINGS AR 71913
888-351-6441

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$710.00 |
| Mileage | 56,222 | 69,045 | $391.91 |
| Equipment | | | |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,251.35 |
| UCONNECT VOICE COMMAND W/BLUETOOTH | No | Yes | -$344.98 |
| | | Total Adjustments: | -$1,914.42 |
| | | **Adjusted Price:** | **$12,058.58** |

Comparable Vehicle Package Details:

FLEXIBLE SEATING GROUP

Comparable Vehicle Option Details:

UCONNECT VOICE COMMAND W/BLUETOOTH

### 7   2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD

**List Price: $12,995.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB4HT519524 | C519524C | 04/28/2020 | 72404 | 105 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - CARS.COM
CENTRAL CHEVROLET CADILLAC
3207 STADIUM BLVD
JONESBORO AR 72404
870-394-5007

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$660.00 |
| Mileage | 56,222 | 65,097 | $276.93 |
| Equipment | | | |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,163.79 |
| | | Total Adjustments: | -$1,546.86 |
| | | **Adjusted Price:** | **$11,448.14** |

Comparable Vehicle Package Details:

FLEXIBLE SEATING GROUP

---

### 8   2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD

**List Price: $13,988.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3C4PDCAB1HT604580 | NT76249A | 04/05/2020 | 72476 | 112 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM
CAVENAUGH CHEVROLET BUICK
GMC
3487 HIGHWAY 67 NORTH
WALNUT RIDGE AR 72476
870-886-3561

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$626.00 |
| Mileage | 56,222 | 62,521 | $238.10 |
| Equipment | | | |
| BLACKTOP PACKAGE | No | Yes | -$249.62 |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,260.69 |
| UCONNECT VOICE COMMAND W/BLUETOOTH | No | Yes | -$347.56 |
| | | Total Adjustments: | -$2,245.77 |
| | | **Adjusted Price:** | **$11,742.23** |

Comparable Vehicle Package Details:

BLACKTOP PACKAGE

FLEXIBLE SEATING GROUP

Comparable Vehicle Option Details:

UCONNECT VOICE COMMAND W/BLUETOOTH

### 9   2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD

**List Price:  $13,495.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|-----|----------|--------------|-----------------|----------------------------|
| 3C4PDCAB6HT573505 | 1330044681 | 05/10/2020 | 38128 | 130 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - CARS.COM
DRIVETIME COVINGTON PIKE
2177 COVINGTON PIKE
MEMPHIS TN 38128
844-556-8331

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|-------------|--------------|--------------|--------|
| Projected Sold Adjustment | | | -$685.00 |
| Mileage | 56,222 | 62,840 | $235.61 |
| **Equipment** | | | |
| BLACKTOP PACKAGE | No | Yes | -$239.30 |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,208.61 |
| UCONNECT VOICE COMMAND W/BLUETOOTH | No | Yes | -$333.20 |
| | | **Total Adjustments:** | -$2,230.50 |
| | | **Adjusted Price:** | **$11,264.50** |

Comparable Vehicle Package Details:

BLACKTOP PACKAGE

FLEXIBLE SEATING GROUP

Comparable Vehicle Option Details:

UCONNECT VOICE COMMAND W/BLUETOOTH

### 10   2017 DODGE JOURNEY SE 4D SUV 4 2.4 NORMAL GAS A2WD

**List Price:  $11,904.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|-----|----------|--------------|-----------------|----------------------------|
| 3C4PDCAB3HT634101 | 20088-1 | 05/15/2020 | 72908 | 133 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - AUTOTRADER.COM
FLOYD TRAYLOR HONDA
3200 S. ZERO STREET
FORT SMITH AR 72908
479-434-5975

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|-------------|--------------|--------------|--------|
| Projected Sold Adjustment | | | -$605.00 |
| Mileage | 56,222 | 71,484 | $383.42 |
| **Equipment** | | | |
| FLEXIBLE SEATING GROUP | No | Yes | -$1,066.05 |
| RADIO: 4.3S | No | Yes | -$157.63 |
| UCONNECT VOICE COMMAND W/BLUETOOTH | No | Yes | -$293.90 |
| | | **Total Adjustments:** | -$1,739.16 |
| | | **Adjusted Price:** | **$10,164.84** |

Comparable Vehicle Package Details:

FLEXIBLE SEATING GROUP

Comparable Vehicle Option Details:

RADIO: 4.3S, UCONNECT VOICE COMMAND W/BLUETOOTH

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2017 Dodge Journey SE | 4 Door Utility 114" WB 2.4L 4 Cyl Gas  FWD | $21,145.00 |

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.

